In the Matter of the Application of the NEW YORK, WEST-CHESTER AND BOSTON RAILWAY COMPANY, Respondent, to Acquire Title to Lands of ARABELLA D. HUNTINGTON et al., Appellants.

1. RAILROADS — STATUTE PERMITTING RAILROAD COMPANY TO FILE AFFIDAVIT OF PAYMENT OF TEN PER CENT OF ITS STOCK AS OF DATE OF INCORPORATION — L. 1903, CH. 627. The statute (L. 1903, ch. 627, amending L. 1893, ch. 238) should be construed as part of the General Railroad Law, and, if possible, in harmony therewith, and its purpose is to provide a remedy for defects in the incorporation of a railroad company and thereby preserve the rights of stockholders. Under its provisions a railroad company, which has omitted to file the affidavit of the payment of ten per cent of its stock required by section 2 of the Railroad Law, may subsequently file such affidavit with the same force and effect as if it had been annexed to the certificate of incorporation.

2. SAME — INSOLVENT RAILROAD COMPANY — SALE OF REAL ESTATE AND ROADBED BY RECEIVER — WHEN SALE DOES NOT TERMINATE EXIST-ENCE OF CORPORATION OR EXTINGUISH INTERESTS OF STOCKHOLDERS. The sale, by a receiver, of the right of way, real estate, tracks and fixtures of an insolvent railroad company whose certificate of incorporation was defective because of its failure to file the affidavit required by section 2 of the Railroad Law, does not, as a matter of law, terminate the existence of the company or extinguish the rights and interests of its stockholders therein, so as to preclude the subsequent filing of the omitted affidavit, where all of the property and assets of the company were not sold, but the receivership was continued, and a further order of sale entered under which nothing was sold except the rights of stockholders to stock subscribed for.

3. SAME — STATUTE REQUIRING RAILROAD TO BE BUILT WITHIN TEN YEARS OF ORGANIZATION OF COMPANY — RAILROAD IN HANDS OF A RECEIVER. A contention that the curative statute (L. 1903, ch. 627) has no application to a railroad company whose railroad was not constructed within ten years of the time of the original organization of the company

as required by chapter 775 of the Laws of 1867, cannot be sustained where a receiver thereof was appointed a few years after its attempted incorporation and the receivership continued down to the time of its reorganization; since the time intervening between an entry of an order appointing a receiver of a railroad corporation and a final judgment terminating the receivership is not to be taken as a part of the time limited by law for the completion or putting in operation of the road.   (L. 1903, ch. 626.)

4. REORGANIZATION OF IRREGULAR OR DE FACTO RAILROAD CORPORATION — WHEN REORGANIZED COMPANY MUST OBTAIN CERTIFICATE OF PUBLIC NECESSITY AND CONVENIENCE AND CONSENT OF LOCAL AUTHORITIES.   Where a railroad company, up to the time of its reorganization and the curing of a defect in its incorporation under the statute (L. 1903, ch. 627), had no legal existence under which it could assert the right to condemn lands for its right of way, but had at most only a *de facto* existence, and its original route and roadbed have been sold by a receiver, it must, so far as the construction of a railroad is concerned, be deemed a new corporation as of the date of its legal organization.   It must, therefore, where its proposed new route is located within the boundaries of the city of New York, obtain the consent of the local authorities required by section 45 of the charter of that city (L. 1901, ch. 466), and it must also obtain the certificate of public necessity and convenience required by section 59 of the Railroad Law (L. 1892, ch. 676).

5. SAME — WHEN REORGANIZED RAILROAD CORPORATION NOT-EXEMPT FROM COMPLYING WITH SECTION 59 OF RAILROAD LAW.   The fact that, upon its compliance with the statute (L. 1903, ch. 627), the railroad company became a valid corporation, as of the date of its original incorporation, with all the powers and privileges it would have been entitled to at that time together with those thereafter granted by law, does not exempt it from obtaining the certificate of public necessity and convenience, required by the statute (Railroad Law, § 59) enacted since the time of the original filing of the articles of incorporation.   The curative statute, construed with the Railroad Law and in harmony therewith, does not authorize a railroad company, whose original roadbed and right of way have been sold, to acquire a new right of way over other territory without complying with the provisions of the Railroad Law in force at the time of its reorganization.

6. IRREGULARITY IN INCORPORATION OF RAILROAD COMPANY DOES NOT AFFECT JURISDICTION OF SUPREME COURT, ON PROOF OF ITS INSOLVENCY, TO APPOINT A RECEIVER AND SELL ITS ASSETS.   The fact, that there was a defect in the original incorporation of the company, does not sustain a contention that there was no legal corporation or franchise to construct a railroad and that, consequently, there was no right of way or roadbed that could be taken by the receiver and sold for the benefit of the creditors of the corporation.   The Supreme Court, upon proof of the insolvency of a corporation, be it regularly or irregularly organized, has the power to terminate its existence, sell its assets and pay its creditors.

While there may have been a defect in the company's franchise and its right of way, still whatever right the company possessed with reference thereto, the court had the power to pass to the receiver and cause it to be sold for the benefit of creditors.

*Matter of N. Y., W. & B. Ry. Co.* v. *Huntington,* 126 App. Div. 909, reversed.

(Argued June 4, 1908; decided October 6, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 2, 1908, which affirmed an order of Special Term confirming the report of commissioners of appraisal in condemnation proceedings.

The facts, so far as material, are stated in the opinion.

*Charles Gibson Bennett* for appellants. The plaintiff is affected by the prohibition of chapter 10, Laws of 1860, against building railroads in the city of New York: (*H. R. T. Co.* v. *W. T. & R. Co.,* 135 N. Y. 395; *N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 1.) A reasonable construction of chapter 627, Laws of 1903, leaves the exercise of the petitioner's right to build its road conditional upon its first obtaining a certificate of public necessity and convenience under the Railroad Law of 1890 (L. 1890, ch. 565, § 59). The plaintiff suffered acts to be done which destroyed the end and object for which it was instituted, and operated as a surrender of its corporate franchises and so resulted in its dissolution under the doctrine of the common law. (*Brinkerhoff* v. *Brown,* 7 Johns. Ch. 217; *Bradt* v. *Benedict,* 17 N. Y. 93; *Bruce* v. *Platt,* 80 N. Y. 379; *Hollingshead* v. *Woodward,* 107 N. Y. 96; *Kincaid* v. *Dwinelle,* 59 N. Y. 548; *Bank of Niagara* v. *Johnson,* 8 Wend. 645.) The plaintiff, by its failure to complete its road within ten years from the time of filing its articles of association, ceased to be a corporation *ipso facto.* (L. 1867, ch. 775; *Winfield Case,* 72 N. Y. 245.) The effect of the judgment of sequestration and sale by the receiver was to deprive the plaintiff of its franchise to build and operate the railroad described in its articles of associa-

tion.   (2 R. S. pt. 3, ch. 8, tit. 4, § 36 ; *Matter of L. A. E. L. & P. Co.*, 188 N. Y. 361.)

*Alton B. Parker* for appellants.   The Westchester Company did not become a corporation by the filing of its articles of association on the 20th of March, 1872, because of the omission of the affidavit required by section 2 of the General Railroad Law of 1850.   (L. 1850, ch. 140.)   The judgment of 1875, in the action to sequestrate the property of the Westchester Company, and the appointment of a permanent receiver and the subsequent proceedings thereunder, terminated the corporate existence of the Westchester Company either as a *de jure* or a *de facto* corporation, and transferred its rights and property to a new corporation as permitted by statute, a corporation adverse to the plaintiff.   (*Hollingshead* v. *Woodward*, 107 N. Y. 96 ; *Slee* v. *Bloom*, 19 Johns. 456 ; *Bradt* v. *Benedict*, 17 N. Y. 93 ; *Bruce* v. *Platt*, 80 N. Y. 379 ; *Briggs* v. *Penniman*, 8 Cow. 387 ; *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473 ; *Raymond* v. *S. T. & Ins. Co.*, 44 Misc. Rep. 37.)   Assuming for the sake of the argument that the Westchester Company became a corporation on March 20, 1872, the date of the alleged filing of its articles of association, its failure to finish its road and put it in operation within ten years from that date ended its corporate existence and deprived it of all its powers.   (L. 1867, ch. 775, § 1 ; *Matter of B., W. & N. T. R. R. Co.*, 72 N. Y. 248 ; 75 N. Y. 335 ; *Farnham* v. *Benedict*, 107 N. Y. 159 ; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 524 ; *Matter of B., Q. C. & S. R. R. Co.*, 185 N. Y. 171.)   Assuming, for the sake of the argument, that the Westchester Company is within the provisions of chapter 627 of the Laws of 1903, and has complied with those provisions, neither of these circumstances saves its corporate life and powers, which ceased because of its failure to finish its road and put it in operation within ten years from the date of filing its articles of association, namely, within ten years from March 20, 1872.   (L. 1867, ch. 775.) If the Westchester Company became a corporation by filing

the affidavit provided for by chapter 627 of the Laws of 1903, then it was created or formed such corporation on the date of such filing, namely, January 6, 1904, and before it could exercise its right to condemn property or any corporate power conferred by law, it must comply with the provisions and obtain the certificates provided for in section 59 of the Railroad Law (L. 1892, ch. 676, § 59). (*N. Y. C. & W. R. R. Co.* v. *B. & E. R. Co.*, 96 App. Div. 471; *Matter of A., J. & G. R. R. Co.*, 86 Hun, 578; *Matter of K., Q. & S. R. R. Co.*, 6 App. Div. 241; *Matter of Wood*, 99 App. Div. 334; *Matter of E. T. Co.*, 4 App. Div. 103; *Matter of A. & M. R. R. Co.*, 37 App. Div. 162.) The Westchester Company, if incorporated at all, was incorporated under the General Railroad Law of 1850, and it could not by incorporation under that law acquire the right to construct a railroad in the city of New York. (*Matter of W., S. A. & P. R. R. Co.*, 115 N. Y. 442; *P. R. T. Co.* v. *Dash*, 125 N. Y. 93; *People ex rel. N. Y. & H. R. R. Co.* v. *R. R. Comrs.*, 81 App. Div. 242; 175 N. Y. 516; *People ex rel. N. Y. C. & W. R. Co.* v. *R. R. Comrs.*, 81 App. Div. 237; 176 N. Y. 577.)

*William B. Hornblower* and *J. Tredwell Richards* for respondent. The omission of the affidavit from the articles of association when filed, though a vital defect until cured, was remedied by filing an affidavit in compliance with the Laws of 1903, and the corporation first acquired existence *de jure* when the affidavit was filed. (L. 1903, ch. 627.) The subscriptions to the stock of the plaintiff corporation were regularly made in conformity with law prior to the original filing of the articles of association. In addition, a further subscription in compliance with chapter 627 of the Laws of 1903 was made thereafter and prior to the passage of said chapter 627. Either subscription was sufficient for the purpose of forming the company. (*Matter of N. Y., L. & W. R. R. Co.*, 90 N. Y. 12; *R., etc., R. R. Co.* v. *Babcock*, 110 N. Y. 119.) Section 59 of the Railroad Law, requiring a certificate of public convenience by the board of railroad

commissioners, does not apply to the New York, Westchester and Boston Railway Company. (*Nash* v. *M. & T. Bank,* 37 Hun, 57; *Fisher* v. *N. Y. C. & H. R. R. R. Co.,* 46 N. Y. 656; *People* v. *Supervisors,* 62 N. Y. 109; *Gibbs* v. *Q. Ins. Co.,* 63 N. Y. 121; *Cyllotel* v. *Mayor, etc.,* 87 N. Y. 441; *Matter of Miller,* 110 N. Y. 216; 108 U. S. 184; 112 U. S. 536; *H. R. T. Co.* v. *Watervliet T. & Ry. Co.,* 135 N. Y. 395; *N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 1; *Calmur* v. *N. Y., etc., W. Co.,* 135 N. Y. 336.) The plaintiff corporation having the rights and status of a corporation organized in 1872, when the territory traversed by its route lay without the limits of the city of New York, would not be subject to the provisions of chapter 10, Laws of 1860, which in 1872 did not apply to the territory in question nor to the streets which were not then streets of the city of New York. The subsequent extension of the city limits would have no retroactive effect for the purpose of changing the rights previously accruing to corporations or individuals within that territory. (*N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 1; *Calmur* v. *N. Y., etc., W. Co.,* 133 N. Y. 336; *H. R. T. Co.* v. *W. T. & R. Co.,* 135 N. Y. 393; *Nash* v. *M. & T. Bank,* 37 Hun, 57; *Fisher* v. *N. Y. C. & H. R. R. R. Co.,* 46 N. Y. 656; *People* v. *Bd. of Supervisors,* 62 N. Y. 109; *Gibbs* v. *Q. Ins. Co.,* 63 N. Y. 121; *Goillotel* v. *Mayor, etc.,* 87 N. Y. 441; *Matter of Miller,* 110 N. Y. 216; *Dash* v. *Van Kleck,* 7 Johns. 477; *Healey* v. *Holton,* 15 N. Y. 591; *Sanford* v. *Bennett,* 24 N. Y. 20; *Rutherford* v. *Green,* 2 Wheat. 196.) But, in any event, the prohibition of the act of 1860 no longer applies. The provisions of the Greater New York charter replacing the provisions of the Consolidation Act of 1882, in which chapter 10 of the Laws of 1860 had been incorporated, provide a new and complete system for regulating the grant of consents to cross the streets of the city of New York, which satisfies and supersedes the condition expressed in the law of 1860, and provides the further legislation required. (L. 1860, ch. 10; L. 1901, ch. 466, §§ 17, 45, 72–74; L. 1905, ch. 629, § 12; *People ex rel. N. Y., N. H. & H. R. R. Co.*

v. *R. R. Comrs.*, 81 App. Div. 242; *N. Y., N. H. & H. R.
R. Co.* v. *Welsh*, 143 N. Y. 411.) Assuming that the act of
1867 was intended by the legislature to apply to a case like
the present, and that this company is to be treated as if it had
actually had the plenary powers of a railroad corporation
from the 20th day of March, 1872, and had willfully failed to
use them as required by the statute, yet, nevertheless, since
the corporation was in the hands of a receiver from the 30th
day of March, 1875, until the 5th day of January, 1904, the
provisions of chapter 626 of the Laws of 1903 would apply,
and the corporation would be relieved from any forfeiture to
the state incurred during the term of the receivership. (*Mat-
ter of B. W., etc., Co.*, 75 N. Y. 335; *S. Bank* v. *Davis*, 16
Barb. 191.) The sale of "all the rights of the New York,
Westchester and Boston Railway Company, and all the right,
title and interest of said company in and to its roadbed, right
of way, real estate, tracks and fixtures" by the receiver, pur-
suant to the order of April 9, 1881, did not operate to divest
the corporation of the powers and franchises necessary for
the construction, maintenance and operation of its railroad;
nor did any of such powers or franchises pass to the purchaser
at the receiver's sale. (*Whitney* v. *N. Y. & A. R. R. Co.*,
32 Hun, 164; *Anderson* v. *Roberts*, 18 Johns. 514; Mora-
wetz on Corp. § 930.)

HAIGHT, J. The respondent, the New York, Westchester
and Boston Railway Company, petitioned the Supreme Court
for the appointment of commissioners to determine the value
of the real property of the defendants which it sought to
condemn for the purpose of its incorporation. An answer
was interposed by the appellants, raising an issue as to the
respondent's right to condemn the lands in question, and
thereupon an order was entered appointing a referee to hear
and determine the same, and upon the return and confirma-
tion of his report, commissioners of appraisal were appointed
who have determined the value of the lands sought to be taken,
and thereupon a final order was entered confirming the same,

The facts found by the referee, so far as material upon this review, are in substance as follows: On the 20th day of March, 1872, an instrument in writing, purporting to be articles of association of the New York, Westchester and Boston Railway Company, was delivered to the secretary of state to be filed by him in his office as articles of association under the General Railroad Law of 1850 and the acts supplemental thereto and amendatory thereof; and the same were received and filed by the secretary of state in his office. But the alleged articles of association did not have annexed thereto or indorsed thereon any affidavit setting forth a subscription of capital stock or payment thereon, or any affidavit required by section 2 of the Railroad Law. Thereupon the respondent assumed to act as a duly incorporated railroad corporation by surveying its route and filing its map in the office of the county clerk of the county of Westchester, showing the route and profile of the railroad of the company from Harlem river to Portchester, and then expended in the construction or grading of its roadbed the sum of $300,000; but no tracks were ever laid upon its roadbed nor has the proposed road ever been completed or operated.

On the 23rd day of March, 1875, in a judgment creditors' action, brought for the purpose of sequestrating the properties of the respondent, then pending in the Supreme Court of New York, an order was entered appointing a temporary receiver of the property, and on the 25th day of March, 1876, final judgment was entered, making the receiver permanent. In February, 1881, on notice to the parties interested and to the attorney-general of the state, an application was made to the Supreme Court for leave to sell the property of the respondent in the hands of the receiver; and on the 9th day of April, 1881, an order of the Supreme Court was entered which, among other things, provided as follows: "It is ordered, adjudged and decreed that said William A. Seaver, receiver of the New York, Westchester and Boston Railway Company, duly appointed by this court, be and he hereby is authorized and directed at once to proceed to sell at public auction to the highest

bidder all the rights of said company, and all the right, title and interest of said company, legal or equitable, in and to its roadbed and right of way and all its real estate, tracks and fixtures, free and clear of all liens of any kind, except taxes on real estate belonging to or in which said corporation may have interest." Thereupon the receiver, pursuant to such order, advertised the property of the respondent for sale at public auction, and the same was sold at such auction to one B. D. Harris for the sum of $5,500, who thereafter assigned all of his right and interest in the property to William F. Van Pelt of the city of New York. This sale was confirmed by the Supreme Court, and the receiver executed and delivered to Van Pelt a deed conveying all of the property of the company embraced in the order. Thereafter Seaver continued to act as receiver for the company until his death; and thereupon and on January 13th, 1883, Henry B. B. Stapler was appointed receiver who subsequently resigned, and on June 10th, 1893, Walter A. Pease was appointed as such receiver; and on the 2d day of May, 1896, an order was entered, authorizing him as such receiver to sell all of the company's right, title and interest in and to the rights, estates, franchises, credits, equitable interests, and all the estate, judgments and property, for a sum not less than $2,000; but no sale appears to have been made under this order. Subsequently and on the 24th day of September, 1898, a further order of the Supreme Court was made, in which the rights of certain persons, naming them, as entitled to receive stock of the company which they had paid for, and also who had the right to pay for and receive stock of the company which they may have subscribed for and not paid for, be sequestrated for the benefit of the creditors of the company, in the hands of the receiver thereof, authorizing him to sell such rights to such stock, in such manner and for such sums and on such terms as he may deem for the interest of the creditors. But it does not appear from the record that he ever made any sale under this order. Pease resigned as receiver on or about March 7th, 1899, and thereupon William T. Tomlinson was appointed in his place; and sub-

sequently and on the 4th day of January, 1904, an order was made authorizing the receiver of the company "to sell at private sale to George T. Forster, of the city of New York, for the sum of $2,500, to be paid forthwith, all the capital stock and subscriptions to stock or rights to stock of the New York, Westchester and Boston Railway Company in his hands, and also authorizing and directing said Tomlinson, as receiver, to make, execute and deliver to the New York, Westchester and Boston Railway Company a deed conveying, assigning and transferring to said company the franchises of said company, free, clear and discharged from all and every lien, claim, demand and judgment in, under or by reason of said actions above entitled, or either of them, and from all claim or interest of the receiver or receivers heretofore appointed or who may be appointed in or under said actions, and providing that all property of the said railway company hereafter acquired shall be free and discharged from any right, title, claim, custody or control of any receiver heretofore or hereafter appointed in said actions, and providing that such receivership in each and every of said actions shall be terminated so far as the same affects the status and rights of the defendant railway company, provided that the said receiver shall hold and distribute the proceeds of the sale under said order and shall remain liable for his acts as receiver until discharged by the further order of the court." Thereupon and on the 16th day of January, 1904, Tomlinson, as such receiver, executed the deed, called for by the order, to the New York, Westchester and Boston Railway Company, and on the same day, as such receiver, executed and delivered to Forster a deed conveying to him all the stock and subscriptions for stock of the company in his hands. Thereafter and on the 5th day of February, 1904, William F. Van Pelt executed and delivered a deed to one Duncan of all of the property, rights and privileges acquired by him in the property of the company, and on the 8th day of March, 1905, Duncan conveyed all of his interests in the same to the company.

6

On the 6th day of January, 1904, pursuant to chapter 627 of the Laws of 1903, three of the directors named in the original articles of association, with an additional subscription list for three hundred and twenty shares, on which $3,200 was paid, made an affidavit of the subscription and payment required by the Railroad Law, and thereupon filed the same with the secretary of state, and then proceeded to file in the office of the county clerk a new map and profile locating the route of the road of the company as altered and amended; and then, upon the consent of the railroad commissioners, increased its capital stock from one million dollars to twenty million dollars, and issued a mortgage upon its property and franchises of twenty million dollars to secure bonds aggregating that sum, a part of which has been sold, and the company has expended in the construction of its road, including the purchase of land necessary in the acquisition of its right of way, the sum of $4,872,059.95.

From the 30th day of March, 1875, to the 5th day of January, 1904, the New York, Westchester and Boston Railway Company remained insolvent, and no work was performed by it or by any person in its behalf upon its right of way in the construction of its railroad.

In 1898 the New York and Stamford Railroad Company located its road for the distance of about two miles upon the part graded by the New York, Westchester and Boston Railway Company, and that corporation has constructed its road thereon, and for several years prior to 1903 has been operating the same, transporting passengers, etc.

The line of the respondent's railroad, as now located, is different from the route as originally located, the two routes coinciding only for a very short distance and chiefly where the amended route shifts across or intersects the original route, and the company intends to build on the amended route only, and not on the original route. The directors of the respondent have never caused a copy of the articles of association to be published, nor have they procured from the board of railroad commissioners a certificate of public con-

venience and necessity, in accordance with the requirements of section 59 of the Railroad Law.

The portion of the respondent's main route, as originally located, from its terminal on or near the Harlem river to the present dividing line between the county of New York and the county of Westchester, and all of the said route from its Throgg's Neck branch line to Fort Schuyler, and all the said described premises, are now and since June 6th, 1895, have been within and a part of the city and county of New York and a part of the territory which was set off from the county of Westchester and annexed to and merged in and made a part of the city and county of New York, under and by virtue of the public acts of the legislature.

The questions presented upon this review call for a construction of chapter 627 of the Laws of 1903, which, so far as material, is as follows: "Where it does not appear by the affidavit endorsed on or annexed to any certificate of incorporation, or articles of association of any railroad company, filed under the laws of this state, that the amount of capital stock required by the provisions of said laws to be paid in good faith and in cash to the directors named in such certificate has been so paid, or where the affidavit required by law is omitted and where such payment has been made to the directors named in said certificate or articles, or any of them, for the use of the company prior to the passage of this act, an affidavit of at least three of the directors named in said certificate, stating that at least the amount of capital stock of such corporation required by the law in force at the time of filing said certificate or articles to be subscribed thereto, has been heretofore subscribed for in good faith and that the amount required by the law in force at the time of filing said certificate to be paid on subscriptions in good faith and in cash to the directors named in the certificate of incorporation has been paid heretofore in cash and in good faith to the directors named in said articles of association, or any of them, for the use of said corporation and that it is intended in good faith to build, construct, maintain and operate the road

mentioned in said certificate, may be filed in the office of the secretary of state, which affidavit shall be annexed to said certificate of incorporation and upon such filing said certificate, or articles shall for all purposes have the same force and effect as if an affidavit in all respects regular and in conformity with law had been annexed to said certificate or articles when said certificate was filed and as if a subscription and payment in all respects sufficient and in conformity with law had been made to the directors named in the articles of association or certificate, prior to the original filing of said articles or certificate, and said certificate of incorporation and the original filing thereof shall be and be deemed valid from the time of such original filing, and such corporation shall be and be deemed a valid corporation from said time of original filing and shall now and hereafter have all the rights, privileges, powers and franchises to which if a valid corporation it would have been entitled by law at the time of such original filing together with such other rights, privileges, powers and franchises as have been since or may hereafter be granted by law to such valid corporations, provided that nothing herein contained shall affect or impair any vested right; and provided that the word 'heretofore' and the words 'prior to the passage of this act' shall be taken to refer to the time of passage of the amendatory act under which this section as herein framed is enacted. A copy of said certificate or articles of association with a copy of said affidavit hereinabove authorized, certified to be a copy by the secretary of state or his deputy shall in all courts and places and for all purposes be presumptive evidence of the incorporation of such corporation and of the facts stated in said certificate and affidavit."

It will be observed that the statute, to which we have referred, is a general act amendatory of chapter 238 of the Laws of 1893, which was also a general act, and becomes a part of the General Railroad Law of the state and should be construed in connection therewith, and, if possible, in harmony with it. The legislative purpose in the latter enactment is quite apparent. It was designed to protect indi-

viduals who had associated themselves together in the organi-
zation of a railroad corporation in good faith intending to
construct and operate a railroad and had invested their funds
in such enterprise. It was not thought just that they should
be deprived of their investments or rights secured by reason
of a defect in their articles of incorporation or the failure of
their attorney to file the affidavit required by the statute as to
the subscription of stock or the payment of ten per cent of
the amount of such subscription. It consequently provided a
remedy to cure the defect and preserve the rights of the
stockholders. It is contended, however, that it has no appli-
cation to the case here presented; that it was never intended
to restore the New York, Westchester and Boston Railway
Company to life, which became insolvent shortly after its
attempted incorporation and remained insolvent down to the
time of the enactment, a period of thirty years, and did not
construct or complete its road within the ten years required
by the statute; that in the sequestration action by its creditors
all of its property and assets, property rights and franchises,
were sold and conveyed to Van Pelt, and by reason of such
sale all of the rights and interest of the stockholders in such
corporation were terminated and the corporation itself ceased
to exist. This would doubtless be the case were it a fact that
all of its property and assets, legal and equitable, had been
sold and transferred to Van Pelt. In this connection we
have quoted above the order under which the receiver made
the sale, and it will be observed that he was directed to sell
" all the rights of said company, and all the right, title and
interest of said company, legal or equitable, in and to its road-
bed and right of way and all its real estate, tracks and fix-
tures." Whether this included all of the property of the
company of every name or nature, we are not advised by any
finding upon the subject. The fact appears, however, that
the receivership was continued, and some years afterwards a
further order of sale was entered, but no sale was made there-
under except that of the right of stockholders to stock sub-
scribed for, which was finally transferred at private sale to

one Forster for the sum of $2,500, which was made on the 4th day of January, 1904, but two days before the filing of the affidavits referred to, pursuant to the act in question. We, therefore, conclude that under the findings as they stand we cannot hold as a matter of law that the stockholders' interest in the company had been entirely disposed of, and that the company as such had absolutely ceased to exist.

It is further contended that the statute has no application, for the reason that the railroad was not constructed within ten years from the time of the organization of the company. Under the provisions of chapter 775 of the Laws of 1867, a railroad corporation was required to finish its road and put it in operation within ten years from the time of filing its articles of association, and in default thereof its corporate existence and powers shall cease. It is true that the railroad was not constructed and put in operation within the time specified by this statute. But, as we have seen, there was a receiver appointed and that receivership was continued until 1904, and under the provisions of chapter 626 of the Laws of 1903, the time intervening between the entry of the order appointing a receiver and the final judgment terminating the receivership shall not be taken to be a part of the time limited by law for the completion or putting in operation of the road.

Assuming that the provisions of chapter 627 of the Laws of 1903 apply to the respondent in this case, and that by filing the affidavit of January 6th, 1904, it became a corporation *de jure*, two questions then arise with reference to the scope and meaning of the act. *First*, under the Laws of 1860, chapter 10, it was provided that it should not be lawful to thereafter construct or operate any railroad in, upon or along any or either of the streets or avenues of the city of New York, except under the authority and subject to the regulations and restrictions which the legislature may thereafter grant and provide. This statute was carried into the Consolidation Act, and under the Laws of 1901, chapter 466, sec-. tion 45, being the Greater New York charter, provision was made authorizing the board of aldermen to grant from time

to time to any corporation the franchise or right to construct and operate railroads in, upon, over and along the streets of the city.    This statute was in force at the time the respondent became a *de jure* corporation.    It has since been amended by the Laws of 1905, chapter 629, section 14, by which the power of the board of aldermen in this respect was vested in the board of estimate and apportionment.    As we have seen, during the time intervening between the filing of the respondent's original certificate in 1872, and the filing of the affidavit of January 6th, 1904, that part of the territory of Westchester county through which the respondent intends to build its railroad was brought in and made a part of the city of New York; and the question now arises as to whether it is necessary for the respondent to procure the consent of the municipal authorities to construct its road in, upon, over, under and along the streets of the city.    *Second,* under the provisions of the Railroad Law, section 59, first enacted in 1892, it was provided that no railroad corporation hereafter formed under the laws of this state shall exercise the powers conferred by law upon such corporation or begin the construction of its road until the board of railroad commissioners shall certify that the public convenience and necessity requires the construction of the railroad.    The question is thus presented as to whether the respondent is required to procure the certificate of public convenience and necessity as a condition precedent to its right to construct its proposed road.

It is apparently conceded that up to the 6th day of January, 1904, the respondent had no legal existence under which it could come into court and assert the right to condemn lands for its right of way, that at most it had up to that time only a *de facto* existence.    It was during its preliminary existence that it surveyed the territory, filed its map and located its right of way in what was then the county of Westchester. But subsequently this route was in part occupied by another railroad corporation, who has built and is operating a railroad upon a portion of the graded territory and route originally so located, so that upon the organization of the respondent as a

valid corporation in January, 1904, it no longer could construct and operate a railroad upon the original route located by it. It thus became necessary for it to make new surveys and to locate a new route, which, as we have seen, was different from that originally located, and only coincides for a short distance, chiefly where the new route shifts across or intersects the original route. In this connection it will further be recalled that under the findings of the referee an order was entered in the sequestration action directing a sale of all of the company's right, title and interest in and to its roadbed and right of way, and that a sale was made thereof pursuant to such order to Van Pelt. It is thus apparent that at the time of the organization of the respondent as a valid corporation in January, 1904, it possessed no right of way or route located, upon which it had the right to construct a railroad without interfering with the vested right of Van Pelt, who had purchased the company's roadbed and right of way, and of the railroad company who had subsequently located its route upon a portion of such roadbed and right of way. It consequently was then compelled to make a new survey and locate a new route. It was, in effect, placed in the position of a new corporation organized on the 6th day of January, 1904, then having the right to locate its right of way and construct its road thereon under the statutes then existing; and under such statutes, as we have seen, the consent of the municipal authorities was necessary to be obtained, as well as the certificate of the railroad commissioners of public necessity and convenience. The directors of the respondent corporation, recognizing the force of these statutes, did apply to the board of aldermen of the city of New York, after the filing of its map and the location of its new right of way, for leave to construct and operate its railroad over, across and along the streets of the city, and thereupon the board of aldermen did pass an ordinance giving the company the right to so construct and operate its road upon an annual rental fixed by the ordinance, thus eliminating that question from further consideration. It is important, however, as bearing upon the

remaining question, that of the certificate of the railroad commissioners, for it is difficult to see why the company should comply with the provisions of the statute with reference to the procuring the consent of the municipal authorities and not comply with the statute requiring the consent of the railroad commissioners.

It was contended on behalf of the respondent that under the provisions of chapter 627 of the Laws of 1903, upon the filing of the affidavit of January 6th, 1904, it was deemed to be a valid corporation from the time of the original filing of its articles of incorporation; and shall have all of the powers and franchises to which it would have been entitled by law at the time of such original filing, together with such other rights, privileges, powers and franchises as have been since or may be hereafter granted by law to such valid corporations, provided that nothing therein contained shall affect or impair any vested right. But, as we have seen, its roadbed and right of way had been sold and was occupied by others who had acquired vested rights therein. The statute does not in terms, nor do we think it was intended to give the company by implication a new franchise and a new right of way, exempt from the requirements of the statutes that had in the meantime been passed. It must be borne in mind that section 59 of the Railroad Law and the act we have here under review are general acts pertaining to the construction of railroads and must be construed together and, if possible, in harmony with each other. The public policy of the state, as established by the act of 1892, and ever since maintained, is to the effect that the construction of a new railroad could only be made upon the certificate of public convenience and necessity, and the legislature will not be deemed to have reversed its public policy in that particular unless it expresses itself in clear and concise language to that effect. The provision of the statute providing for the curing of the defect in the original incorporation and of its relating back to the time of the original filing of its articles, was intended doubtless to preserve to the corporation all of its rights or property, privileges and powers which had not been

disposed of, or passed from its control or right to occupy, and not to give to it a new franchise and a new route over other territory. As we have seen, its original route and roadbed had been disposed of and had passed beyond the power of the company to redeem or reoccupy. It must, therefore, so far as the constructing of a railroad is concerned, be deemed a new corporation organized on the 6th day of January, 1904, subject to the requirements of the statute then existing, especially that of section 59 of the Railroad Law.

It is contended that " When the judgment in the sequestration action was entertained, there was no legal corporation and there was no franchise to construct a railroad. There was in existence only an association of men who had attempted to create a corporation. The franchise to be a corporation and the franchise to construct a railroad are inseparable, in that both must be created and exist at the same time. The judgment in the sequestration action, therefore, could not be held to dissolve the corporation, for there was none in existence to be dissolved. Nor could the receiver be deemed to take title to a franchise to construct the railroad, for there was none in existence."

It is quite true that there was a defect in the incorporation of the company; but it was a defect that could have been remedied by the filing of a new certificate, and after the statute of 1893 it could have been cured by the filing of an affidavit. The certificate was received without objection by the secretary of state, and the signers thereof assumed thereupon to act as a corporation. It was a *de facto* body and should be so treated. It caused a survey to be made, a map filed and a route located, on which was expended $300,000 in the construction of a roadbed. Suppose they had succeeded in completing the road upon the route so located before becoming insolvent. Could it then be claimed that nothing passed *to the receiver in the sequestration action?* The Supreme Court, either by an action brought by the attorney-general or by the creditors upon proof of the insolvency of the association, be it regularly or irregularly organized, would

have the power to terminate the existence of the association, sell its assets and pay its creditors. The act of 1903, as we have seen, provided a remedy for curing the defect. It then provided that the defect should be deemed to be cured as of the filing of the original certificate in 1872. It will not do to deem the defect cured in one breath and not in another. It will not do to say that the company had a valid franchise and a valid route located in 1872, and consequently the statutes giving the board of aldermen and the board of railroad commissioners the power to determine whether a road shall be built have no application; and then hold in an action of sequestration of property maintained by the creditors that there was no franchise, no right of way, no roadbed which could be taken by the receiver and sold for their benefit.

The construction of the roadbed represented the capital of the company, to the extent of the cost thereof. It was a railroad partially completed. While there may have been a defect in the company's franchise and its right of way, still whatever right the company possessed with reference thereto and the construction made by it, we think the court had the power to pass it to the receiver and cause it to be sold for the benefit of the creditors. The question is as to the intent of the legislature as evidenced by the terms of the statute. We think that it was solely to place companies, which through inadvertence had fallen into error in the filing of their articles of incorporation, in the same position as if the articles had been properly filed, subject to all the advantages and disadvantages, rights gained and losses incurred thereby. To hold otherwise would give to companies whose articles of association were defective, a positive advantage over those who had complied with the statute. It would relieve such companies from a compliance with all of the requirements which the legislature in subsequent years has deemed wise to enact for the protection of the public, and at the same time relieve them from the rights of creditors to have its property, road and franchise sequestered for their benefit. Such an intent should not be imputed to the legislature.

The sequestration judgment does not appear to have been reversed or annulled. It is not claimed that there was any defect in parties, or that the proper parties were not before the court. It remains a judgment of the Supreme Court in full force and effect.

It follows that, while the company's charter is valid, the judgment and order should be reversed and the proceedings dismissed, with costs in all courts, but without prejudice to a renewal upon the obtaining of the certificate of the public service commissioners of convenience and necessity.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; WERNER, J., not voting.

Ordered accordingly.