[No. 11413.  Department One.  August 22, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Washington Water Power Company, Plaintiff*, v. CLARK V. SAVIDGE *et al., as Board of State Land Commissioners, Respondents*, GEORGE HEYNDERICKX *et al., Defendants.*[1]

PUBLIC LANDS — DISPOSAL OF STATE LANDS — IMPROVEMENTS BY LESSEE—APPRAISEMENT—STATUTES—CONSTRUCTION—ACTS IN PARI MATERIA. Under Rem. & Bal. Code, §§ 6828-6830, providing that the state may grant to public service corporations the right to overflow state lands for the construction of power plants, the board of state land commissioners to first appraise the damages, the commissioners have the power and it is their duty to appraise the damages not only to the fee, but also to the improvements of a lessee from the state although the statute does not expressly provide for appraisement of improvements; in view of the settled policy of the state, in all its general legislation in reference to the lease and sale of state lands, to constitute the board of state land commissioners as the definite

[1]Reported in 134 Pac. 680.

tribunal to appraise and fix the value of the improvements thereon; since the act in question is a part of the general system relating to the same class of subjects, and acts *in pari materia* are to be read together.

MANDAMUS—TO BOARDS—PRACTICE—QUESTIONS OF FIRST INSTANCE. Upon issuing a writ of mandamus to the state land commissioners to appraise the value of the improvements of a lessee on state lands, the board will not be directed as to questions to be passed upon in the first instance by the board.

Application filed in the supreme court August 8, 1913, for a writ of mandamus to compel the board of state land commissioners to appraise improvements upon certain state lands. Granted.

*Post, Avery & Higgins,* for relator.
*Carey & Johnson,* for defendants.

GOSE, J.—This is an application for a peremptory writ of mandate directing the respondents, as the board of state land commissioners, to appraise the improvements upon certain lands owned by the state.

The relator is a public service corporation, engaged in the business of operating a street railway system in the city of Spokane, and in manufacturing and selling electric energy for the purpose of lighting such city and furnishing lights to its inhabitants for house lighting purposes. In 1907, the state granted the power and authority to any person or corporation to perpetually back, hold water upon, and overflow any of its lands whenever necessary in the erection, construction, maintenance or operation of any water power plant, reservoir, or works for impounding water for power purposes, irrigation, mining or other public use. The grant provides that such power and authority shall not be exercised until an application shall have been made to the board of state land commissioners to have the damage appraised and fixed, and that as soon as such damage shall have been fixed by such board, the same shall be paid to it by the applicant. Laws of 1907,

page 233; Rem. & Bal. Code, §§ 6828 to 6830, inclusive
(P. C. 171 §§ 217, 219, 221).

On the 29th day of September, 1910, the state, through its
board of state land commissioners, by an instrument in writ-
ing, granted to the relator the power and authority to over-
flow a tract of its land upon which the defendants Heyn-
derickx as lessees had made improvements. The relator, a few
days later, paid the damages assessed by the board, it only
having appraised the damages to the fee. The tract of land
embraced in the grant is situated on the borders of the Spo-
kane river. In the spring of 1911, the relator commenced,
and has since prosecuted, the work of constructing a large
dam and power plant in the Spokane river about twelve miles
below this tract. The work has so far progressed that the
land embraced in the grant will soon be overflowed. The de-
fendants Heynderickx are holding possession of this tract of
land under a lease from the state, which expired on the 2d day
of August, 1912, and have placed improvements thereon. The
lease contains the following reservation:

"The state of Washington reserves the right, by or through
any board, commission, officer or officers, or otherwise, and
whether upon the application of the lessee or upon the appli-
cation of any other person, association or corporation, or
otherwise, to grant such privileges, permits for use, ease-
ments for rights of way and for other purposes, upon, over,
through or across said land, or any part thereof, for any and
all purposes, and uses and to any extent now or hereafter au-
thorized by law and the right to sell or otherwise dispose of
any and all timber and other valuable materials of any name
or nature existing thereon or therein, with such rights and
privileges for the protection, use and removal thereof as may
be authorized by law."

On the 1st day of October, 1910, the commissioner of pub-
lic lands notified the defendants of the rights which the state
had granted to the relator. The board of state land commis-
sioners declined to appraise the improvements made by the

·lessee, on the ground that the law has not conferred the power upon them to do so.

The application presents two questions: (1) Have the defendants an equity to appraise? and (2) if so, is it the duty of the board of state land commissioners to appraise it? The two questions may be best considered together. It is true that the statute, which lies at the foundation of the grant to the relator, makes no express provision for an appraisement by the board, but it is equally true that it does not expressly save any rights to the lessee. We must therefore look to the general legislation in reference to the lease and sale of state lands and to grants of other privileges over state lands which affect the improvements made on state lands under a lease from the state. We there find that it has been the settled policy of the state from the beginning to protect the lessee of state lands to the extent that the improvements he has put on the land has added "to the value of the lands for the purpose of selling the land in the manner provided by law." This equity, however, is subject to the conditions (a) that the improvements "were placed on the land in good faith by a lessee whose lease had not been canceled or subject to cancellation for any cause," and (b) that the lessee has complied with the terms of his lease, and (c) that the improvements were not made with intent to "defraud the state or the intending purchaser of the land from the state." Rem. & Bal. Code, §§ 6667, 6668, 6690 (P. C. 477 §§ 53, 99, 97).

These sections of the statute also provide that, in case of a lease or sale of the land to a party other than the lessee who made the improvements, the board of state land commissioners shall appraise the improvements. The board is also required to appraise the improvements, if any, where a right of way is granted over the public lands of the state to a railroad company (Rem. & Bal. Code, §§ 6833-6836 [P. C. 171 §§ 181-187]), and where a right of way is granted over such lands to a municipal corporation or to an electric light, power or street railway company (Rem. & Bal. Code, §§ 6848-6850

[P. C. 171 §§ 207, 209, 211]), and upon tide lands relet or sold to any person other than the original lessee. Rem. & Bal. Code, §§ 6766, 6767 (P. C. 477 §§ 151, 153). It is significant that in every instance where the state has recognized a property right in the lessee in the improvements which he has made upon its lands, it has put the duty upon the board of state land commissioners to appraise the value of the improvement. In short, it has established and maintained a fixed and harmonious policy, and has provided a definite tribunal and clothed it with broad power and authority touching the general subject of state lands.

It is not to be presumed that in the single instance of a grant under the act of 1907, it intended to depart from a policy so long and so consistently pursued and remit the grantee of such privilege to the courts to fix the value of the beneficial interest of a lessee whose lease has expired. It is one of the most elementary rules of statutory construction that acts in *pari materia* will be read together for the purpose of ascertaining the legislative intent.

"Where statutes are parts of a general system relating to the same class of subjects, and rest upon the same reasons, they should be so construed, if possible, as to be uniform in their application and in the results which they accomplish." *Sheldon v. Boston & A. R. Co.*, 172 Mass. 180, 182, 51 N. E. 1078.

In *Ensley v. State*, 172 Ind. 198, 88 N. E. 62, in referring to this rule, it was said that all laws upon a given subject should be construed together so as to produce a harmonious system, if possible, the presumption being that a new law relating to such subject was enacted with reference to the former laws. In *Rural Independent School District No. Ten v. New Independent School Dist.*, 120 Iowa 119, 94 N. W. 284, it was held that the rule to which we have adverted justified a court in taking into consideration the general legislative purpose and giving it effect, even though it leads to an expansion or an abridgement of the language used in some por-

tions of the statute. *In re New York, W. & B. R. Co.*, 193 N. Y. 72, 85 N. E. 1014, voices the same rule of interpretation.

Counsel for the defendants argue that the statute of 1907 made no provision for the appraisement of their improvements, because the privileges which it confers are granted only to those engaged in a public service and because they may exercise the right of eminent domain. This argument would be persuasive had not the state in other grants to those clothed with like power put the duty of appraisement on the board of state land commissioners. The very laws that protect the equity of the defendants designate the board of state land commissioners as the tribunal to appraise that equity. We cannot resort to these laws for the one purpose and ignore them for the other.

The defendants have cited *Wilkes v. Hunt*, 4 Wash. 100, 29 Pac. 830, and kindred cases. This case and the other cases cited hold that, as against a purchaser, the lessee may remain in possession of the leased premises until he has been compensated as the law requires. It is apparent that this view does not touch the point at issue.

The relator alleges that the defendants made certain improvements after they had received notice of the grant to the relator, and that they have made improvements since their lease expired which were not made in good faith. It also alleges that some of the improvements have not augmented "the value of the lands for the purpose of selling" them in the manner required by law, and invites us to direct the board of state land commissioners to exclude all such improvements. These are questions to be passed upon in the first instance by the board.

Let the writ issue.

Crow, C. J., Ellis, Fullerton, and Parker, JJ., concur.