THE CITY OF ROCHESTER, Plaintiff, *v.* UNION FREE SCHOOL DISTRICT NUMBER FOUR OF THE TOWN OF LIVONIA, LIVINGSTON COUNTY, and Others, Defendants.

Fourth Department, June 28, 1938.

*William H. Emerson, Corporation Counsel,* for the plaintiff.

*Marvin R. Dye,* for the defendant Union Free School District Number Four, Town of Livonia.

*Scott W. Crane,* for the defendant Town of Livonia.

*Denton D. Robinson, County Attorney,* for the defendant County of Livingston.

*Edward M. Ogden,* for the defendant Town of Rush.

*F. Allen DeGraw [Earle S. Warner,* of counsel], for Ontario County, filing brief *amicus curiæ.*

*Hampton H. Halsey,* for the Town of Henrietta, filing brief *amicus curiæ.*

LEWIS, J. A submitted controversy upon an agreed statement of facts requires us to determine whether a part of the municipal water supply system owned by the city of Rochester and located outside the corporate limits is exempt from taxation under the provisions of section 411 of the General Municipal Law (added by Laws of 1935, chap. 525, effective April 27, 1935).

Under authority granted by chapter 387 of the Laws of 1872, and by subsequent amendatory statutes, the plaintiff, the city of Rochester — to which it will be convenient to refer as " the city "— has acquired over a period of sixty-five years certain lands and rights in real property located in outlying townships where it has developed protected watersheds and has constructed and now maintains reservoirs, pumping stations, pipe lines and other facilities required to conduct an adequate municipal water supply from lakes in remote upland locations. To accomplish this project the city has taken title to property in the townships of Springwater, Conesus, Livonia and Lima in the county of Livingston; the townships of Canadice, Richmond and Bloomfield in the county of Ontario and the townships of Mendon, Rush, Henrietta and Brighton in the county of Monroe. As our present problem involves the legal right of outlying tax districts to tax city owned property within their boundaries, we may be aided at the outset by a consideration of the historical background of tax statutes which relate themselves to the question before us.

Prior to 1896, the rulings of our courts had established it as a common-law principle that property of municipal corporations held for public use was not taxable. (*City of Rochester* v. *Town of Rush*, 15 Hun, 239; revd. on other grounds, 80 N. Y. 302; *People ex rel. Mayor, etc., of New York* v. *Assessors*, 111 id. 505.) It was during the prevalence of that rule that a commission to revise and consolidate certain general statutes was appointed under chapter 289 of the Laws of 1889, and recommended to the Legislature a statute which exempted from taxation —" Property of a municipal corporation of the State held for a public use,"— *without regard to its location*. When this recommendation was acted upon by the Legislature of 1896, which enacted the Tax Law, it chose to cut down the exemption proposed by the revisers by adding the words —" *except the portion of such property not within the corporation*." (Laws of 1896, chap. 908, § 4; Cf. *People ex rel. City of Amsterdam* v. *Hess*, 157 N. Y. 42, 45.) The statute thus enacted was declaratory of the tax policy of the State. That policy, which remains unchanged today (Tax Law, § 4, subd. 3; *City of Rochester* v. *Coe*, 25 App. Div. 300; *People ex rel. City of Rochester* v. *De Witt*, 59 id. 493; *People ex rel. City of Amsterdam* v. *Hess, supra*, pp. 44, 45; *Matter of Village of Delhi*, 201 N. Y. 408, 413), affords a complete answer to our present inquiry — unless, as the city contends, the Legislature has changed that long established tax policy by its enactment of section 411 of the General Municipal Law (Laws of 1935, chap. 525).

We must view the city's claim in that regard in the light of the settled rule that a statutory exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. As tax exemption does nothing more than shift from one person or class of property to another its proportionate share of the cost of government, the courts have favored such exemption only in those rare instances where the purpose of the statutes clearly indicates the Legislature's intent to give immunity from tax. (*Matter of Board of Education, Jamestown*, v. *Baker*, 241 App. Div. 574, 575, 576; affd., 266 N. Y. 636; *People ex rel. Mizpah Lodge* v. *Burke*, 228 id. 245, 247, 248; *People ex rel. D. K. E. Society* v. *Lawler*, 74 App. Div. 553, 557; affd., 179 N. Y. 535; 2 Cooley on Taxation [4th ed.], p. 1403, § 672.)

On April 8, 1935, a message from the Governor to the Legislature (50 State Dept. Rep. 464) and a subsequent " Emergency Message " upon the subject, recommended the enactment of legislation which would permit municipalities within the State to share in a Federal fund of $4,880,000,000, which had recently been appropriated by the Congress for unemployment relief and public work relief projects. Promptly thereafter the Legislature passed chapter 525 of the Laws of 1935, which became effective April 27, 1935, by which there was added to the General Municipal Law, article 14-C, to be known as the " Revenue-producing Undertaking and Revenue Bond Law."

In general this statute authorizes municipalities of the State to acquire, construct or improve any " revenue-producing undertaking " to be operated for the promotion of public welfare and the improvement of the health, safety, comfort and convenience of the inhabitants of the municipality. (General Municipal Law, §§ 400–416.)

The statutory plan for financing such undertakings has unusual features. The bonds to be issued " under this article " are not a debt of the municipality which promotes the undertaking. They are issued without regard either to the outstanding obligations of the municipality or to any limitation which may be placed by law upon the amount of its debt (§ 408); they may be sold only to the United States government and at a price not less than par (§ 404), and the act strictly prohibits the levying of taxes by a municipality to meet the payment of either principal or interest (§ 409). The undertaking must be self-supporting and to that end the statute requires that the entire cost of operation and maintenance of the completed undertaking, as well as interest charges and funds required for the retirement of maturing bonds, shall be made an exclusive charge against the income to be derived

from the undertaking and in no event may they become a debt of the municipality. (§§ 408, 410, 412.)

It is also of interest to note that the framers of the act apparently anticipated and made provision for quick action by municipalities desiring to take advantage of its benefits. The act lacks those mandatory provisions, common to statutes authorizing public work, which fix a period of time for consideration by the governing body before the municipality may be committed to such a project. Here, on the contrary, we find power granted to the governing body to commit the municipality to the various undertakings thereby authorized and at the same time to direct the issuance of bonds as a means of financing the undertaking. Such action may be taken by " * * * resolutions of the governing body of the municipality which may be adopted at a regular or special meeting *and at the same meeting at which they are introduced* by a majority of all the members thereof then in office and which shall take effect immediately upon adoption." (§ 404.)

Having in mind the unusual features which characterize article 14-C of the General Municipal Law, we reach a consideration of section 411 which the city invokes in this action and which provides:

" § 411. Undertaking and bonds exempt from taxation. So long as a municipality shall own any undertaking, the property and revenue of such undertaking shall be exempt from taxation. Bonds issued under this article and the income therefrom shall be exempt from taxation, except transfer and estate taxes."

It is the city's position that the exemption from taxation which is accorded to a municipality under section 411, is not limited to the property which comprises an " undertaking " constructed under article 14-C of the General Municipal Law but that, as applied to the agreed facts in this action, such statutory exemption extends to the city's reservoirs, pipe lines and all other facilities located outside the city's boundaries which have been acquired and constructed since 1872 in the development of a municipal water supply system.

In support of its position the city points to section 401 of the act which defines the term " undertaking " as used to include " the following revenue-producing undertakings, whether now existing or hereafter acquired or constructed: * * * systems, plants, works, instrumentalities and properties used or useful in connection with the obtaining of a water supply * * *." In view of the conceded fact that the city's water supply is " managed and operated in an efficient manner and at the lowest possible cost consistent with sound economy and public advantage, to the end that its services are made available to the public at the

least cost possible "— all within the mandate of section 402 — the city argues that the portion of the project lying within the defendants' tax districts and constructed over a long period of years should be given tax exemption under section 411.

In reaching our conclusion, which is opposed to the city's position, we have given consideration first to the procedure followed by the city in financing the acquisition of real property and the construction work which has been done incidental to the development of its water system not only in the past but, more significantly in connection with a recent minor replacement which was constructed in one of the defendant tax districts since the enactment of article 14-C of the General Municipal Law.

On October 7, 1935, the city applied for and received from Public Works Administration, a Federal agency, funds equal to forty-five per cent of the cost of a new spillway to be constructed as a replacement at the outlet of Hemlock lake in the township of Livonia and within the boundaries of the defendant Union School District Number Four. The work was completed at a total cost of $89,762.18, of which Public Works Authority contributed $35,710.09, and the balance of $54,052.09 was paid from funds then on hand to the credit of the city's division of water in the department of public works. Thereafter the defendant school district, for the purpose of levying a school tax, assessed the city's property lying within its limits in the total amount of $594,700, which sum included an increased assessment upon the completed new spillway at Hemlock lake. When a tax of $5,947 was later levied by the school district against the city's property and became due October 7, 1937, the city refused to pay the tax. In like manner the city has refused to pay the State, county and town taxes for the year 1937 which each of the defendant townships has levied against the portion of the city's water system within their respective boundaries.

We cannot accept the city's argument that after the effective date of article 14-C of the General Municipal Law the city was exempt from taxation by the defendants upon its water supply property lying within their respective boundaries. From our knowledge of the economic conditions which prevailed in 1935, of which we may take judicial notice, and from a close study of the unusual provisions of the act itself — with due regard for the provisions of section 415 — it is manifest that the enactment of article 14-C was emergency legislation designed to legally qualify the counties, towns, cities and villages of this State to share in Federal funds which were then available to municipalities which elected to undertake public work projects at a time when unemploy-

ment was a serious problem. Having in mind the legislative purpose, as thus disclosed, and construing section 411 in its proper relation to all other provisions of the article of which it is a part, we interpret the intention of the Legislature to be to exempt from taxation that property only which is a revenue-producing project, undertaken by a municipality in strict accord with the provisions of article 14-C, which definitely relieves the municipality from liability for either the original cost of the undertaking or the expense of its operation and maintenance.

If we are correct in thus interpreting the statute, the conceded facts before us do not afford a basis for the exemption which the city claims. There is no proof that in connection with the recent construction of the new spillway at Hemlock lake or the earlier acquisition and improvement of any other property now taxed by the defendants, the city passed the resolution required by section 404. Nor is there proof that the city has authorized the issuance of revenue bonds of the type for which sections 404–409 make provision; or that the cost of maintenance and operation of the entire system or any part thereof is an exclusive charge against revenues resulting from its operation as required by section 410. On the contrary, we find the concession that the cost of the entire water supply system was paid by the city from funds which were either the avails of bonds sold to the general public for that single purpose, and which thus became a city debt, or from funds created by city revenues or city taxes. It is also agreed that the cost of maintenance and operation of the entire system, as well as interest charges upon the incidental bonded debt and the cost of retiring matured bonds, are city obligations.

These conceded facts are ample proof of a failure by the city to bring within the requirements of article 14-C, its acts in connection with the property for which it now seeks tax exemption. As we deem compliance by the city with the requirements of article 14-C to be a prerequisite to the immunity accorded by section 411, we believe the defendants were within their legal rights in levying the taxes here in suit.

In reaching that conclusion we have been influenced by another consideration. If the city's argument in support of tax exemption is to prevail it must follow that when, in 1935, the Legislature added to the General Municipal Law the new article 14-C, it repealed by implication that basic provision of subdivision 3 of section 4 of the Tax Law by which municipally owned property located outside the corporate limits was made taxable. We have seen that a well-defined tax policy, which embraced that important principle, was established by subdivision 3 of section 4 of chapter

908 of the Laws of 1896. Giving proper weight to the rules that the repeal of a statute by implication is not favored by the court and that statutory exemption from the taxing power of the State will not be implied from language which will admit of any other reasonable construction, we go further and conclude that by its enactment of the emergency legislation of 1935, comprised within article 14-C of the General Municipal Law, the Legislature did not intend by implication to bring about the drastic change in a long-established tax policy for which the city now contends. Had such a change been intended — which would cast upon suburban communities a financial burden of great magnitude — it would not have been accomplished by an implied repeal. A change of policy so far-reaching would have occurred only by specific repeal after the Legislature had given full consideration to the consequences. There is high authority for the recent statement that " ' As a general rule, where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is plainly shown.' " ( *United States* v. *Arizona*, 295 U. S. 174, 191; *United States* v. *Jefferson Electric Co.*, 291 id. 386, 396. Cf. *Matter of New York, Westchester & Boston R. Co.*, 193 N. Y. 72, 89.)

The submitted controversy is determined in favor of the defendants. It follows from the stipulation of record that a judgment should enter declaring that the various assessments by the defendants, as set forth in the agreed statements of fact before us, and the taxes levied thereunder in each instance, are legal and valid, and that the city of Rochester, as plaintiff herein, be adjudged to pay the amounts thereof respectively with fees, interest and penalties thereupon as provided by law, without costs to any party.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Submitted controversy determined in favor of the defendants, without costs.