[No. 28994.   *En Banc.*   October 7, 1943.]

JOHN E. BOYER *et al., Appellants,* v. THE STATE OF
WASHINGTON *et al., Respondents.*[1]

[1]Reported in 142 P. (2d) 250.

*Evert Arnold, Roy D. Robinson,* and *W. S. Greathouse,* for appellants.

*The Attorney General* and *George Downer, Assistant,* for respondents.

STEINERT, J.—Plaintiffs brought suit against the state of Washington to recover the value of certain improvements made by them on parcels of tidelands leased to them by the state and, in addition, to recover the amount of annual rentals and taxes paid by them during the term of their lease. The cause was tried to the court without a jury. In a memorandum opinion, rendered after the trial, the court concluded that the plaintiffs had mistaken their remedy, and for that reason alone the court directed that the action be dismissed. Plaintiffs' motion for new trial was later denied, and thereafter findings of fact, conclusions of law, and judgment dismissing the action were entered. Plaintiffs appealed.

The facts are undisputed. On October 4, 1902, the state of Washington, through its land commissioner at that time,

executed to one F. D. Black a series of leases covering certain tidelands fronting the city of Ballard, now a part of Seattle, for a term of thirty years. The total annual rental, payable in advance, was fixed at two hundred fifty-two dollars. The leases each contained, among other provisions, the following:

"The tide lands herein shall not be offered for sale except upon application of lessee, who shall have preference right to re-lease at highest rate bid: Provided, however, and these rights are conditioned that lessee shall keep his lease in good standing.

"All improvements placed upon said land by the lessee, capable of removal without damage to the land, where the lease is yielded to the state prior to any application to purchase said land, may be removed by the lessee, or at his option may remain on the land subject to purchase or hire, and this lease is granted according to the provision of an act relating to lease, etc., of state lands, approved March 16, 1897 (as amended by section 2 of an act approved March 13, 1899, and acts amendatory thereof and supplemental thereto [These legislative acts of 1897 and 1899 include provisions relative to the preferential rights of lessees of public lands to re-lease, and the removal or other disposition of improvements.])."

At the time that these leases were given, there had been no development of tidelands in that vicinity. The lands were far removed from any populous center and had no direct connection with any business district. In fact, there was no highway adjoining them until sometime in 1936 or 1937, which was after the controversy herein arose.

On August 31, 1912, appellant John E. Boyer, who will hereinafter be referred to as though he were the sole appellant, purchased Black's leasehold interests for the sum of twelve thousand dollars and, with the written approval of the land commissioner, took assignments of Black's several leases.

In 1925, appellant, by contract had with Puget Sound Bridge & Dredging Company, constructed a bulkhead and made a fill of sand and gravel upon these tidelands to the extent of one hundred ninety-eight thousand cubic yards.

The reasonable price of this improvement work was, according to the evidence, approximately twenty-five or thirty cents a cubic yard.

On April 1, 1927, the land commissioner filed a replat of "Ballard Tide Lands," including therein the lands involved in this action, and established in the replat certain waterways adjacent to appellant's lands. Thereafter, on April 4, 1927, the land commissioner issued to appellant a lease in lieu of the former leases referred to above. The lieu lease was for a term of thirty years beginning, retroactively, October 4, 1902, and its provisions were in all respects the same as those contained in the original series of leases, except that some additional land was included in the lieu lease and the annual rental was increased to $320.75.

At its 1929 session, the legislature passed an act, chapter 177, Laws of 1929, p. 439, which concededly has given rise to the difficulties culminating in this lawsuit. Section 1 of that act authorized the land commissioner to vacate certain waterways in the replat of Ballard tidelands, and directed him to certify to the governor, for deed to the city of Seattle, a designated list of tidelands, including all of those involved in this action, together with the vacated waterways, excepting from such directed certification, however, any lands that were then under lease, until the expiration of such lease. Section 2 of the act authorized and directed the governor and secretary of state, respectively, to execute and attest a deed conveying all such tidelands to the city of Seattle. Section 3 of the act provided:

"All of the tide lands described in section 1 of this act are hereby granted to said city of Seattle to be used for public park, boulevard, ferry landings and temporary waiting basin for shipping entering the government canal, and for no other purposes; . . ."

Immediately after the effective date of that act, the land commissioner vacated the waterways, and a deed as directed was subsequently executed conveying to the city of Seattle all the lands specified in the legislative act, except

those lands which had been leased to the appellant. No deed covering the excepted portion has ever been delivered, executed, or prepared. Apparently the legislative mandate has not been fulfilled in the latter respect because of appellant's existing leasehold and the subsequent claim made by him as hereinafter related.

Appellant's lease expired on October 4, 1932, three years after the passage of the 1929 act. Throughout the terms of both the original leases and the lieu lease, appellant and his predecessor Black meticulously performed all obligations imposed upon them, including payment to the state of Washington of annual rentals totalling $7,918.13 and payment of taxes amounting to $2,635.86. Due to the fact that the lands have never been commercially developed, appellant has never received any income therefrom.

At the expiration of his lease in 1932, appellant, having the preference right to re-lease these tidelands, made application to the land commissioner for such re-lease. The commissioner declined, however, to act upon the application, giving as his reason that "their hands were tied by this act of the legislature." Failing in his repeated attempts to secure a re-lease of the tidelands, appellant made claim to the commissioner for compensation for the improvements which he had brought to the lands by way of bulkheading and filling them.

During the interim between October, 1932, and some time in 1935, appellant and the land commissioner had many conferences and negotiations looking to a possible settlement of the controversy, but these produced no immediate solution. Finally, a proposal was made, at whose instance the record does not clearly disclose, that an appraisal of the value of the improvements be obtained and, if the report of the appraiser should be satisfactory to all concerned, a recommendation for settlement would be submitted to the legislature at its next regular session. The land commissioner suggested the name of a suitable appraiser, and his services were immediately procured by the appellant himself.

In this connection, we may say that we accept the trial court's finding that this appraisement was not conducted under the auspices of the land commissioner, as is contemplated in the ordinary case of appraisement required by the statute in matters affecting public lands.

Nevertheless, an appraisal was made, which showed a proportionate value of $10,800 for the actual improvement to the lands resulting from the fill constructed by the appellant. This appraisement did not take into consideration, however, certain other elements which it was thought had a beneficial effect upon the lands, but as to those elements there was some legal question which the appraiser did not consider himself qualified to determine.

Upon receipt of the appraiser's report, further conferences were held between appellant and the land commissioner, in consequence of which a bill was introduced at the 1935 session of the legislature seeking an appropriation of twenty-five thousand dollars for the relief of appellant, as compensation for the improvements made by him. As stated in the bill, no provision for such compensation had been set up in chapter 177, Laws of 1929, which directed conveyance of the lands to the city of Seattle. The bill was introduced in the House of Representatives on March 4, 1935, but had not been acted upon at the time of the legislative adjournment on March 13th.

Appellant, thereafter, again took up the matter with the land commissioner, endeavoring to procure a settlement. The commissioner, however, stood upon his then recently declared position that appellant had nothing coming to him from the state, and that if appellant had been damaged at all he should seek recovery from the city of Seattle, which was the named beneficiary under the 1929 act mentioned above. Being unable to secure any further consideration of his claim, appellant instituted this action.

Respondents do not now contend that appellant is not entitled to any compensation at all for the value of the improvements. They concede that the improvements have some value and that appellant should be paid something

therefor, though not the amount claimed by him. As appears by their brief, respondents' position now is (1) that the obligation to pay appellant the value of the improvements rests not upon the state, but upon the city of Seattle, to which the tidelands are to be deeded, in compliance with chapter 177, Laws of 1929; and (2) that, in any event, and regardless of the identity of the party liable for such compensation, appellant's only remedy, at this stage, is an action in mandamus to compel the commissioner to make an appraisement of the value of the improvements, under statutory procedure, leaving open for determination in some other form of proceeding the question as to who shall pay to appellant the amount of the value thus found.

The trial court did not pass upon the first question presented by respondents, but confined itself to the second. In his memorandum opinion, the trial judge expressed himself as being satisfied that appellant was entitled to something for the improvements made upon the land, but concluded that appellant's exclusive remedy for the time being is an action in mandamus to compel the commissioner to make a statutory appraisement. Findings and conclusions to that effect were entered, resulting in a judgment of dismissal of the present action.

In our opinion, a proper determination of the pending controversy requires that we consider and decide both of the questions presented by the respondents. We shall discuss them in the order above stated.

Throughout the period of years involved in this matter, it had been the policy of this state and the practice of its commissioner of public lands to encourage the improvement and development of state tidelands by private capital and industry. Many of such lands were inaccessible at the time and consequently private capital could be interested therein only if it were assured of peaceable possession and control through long term leases. At the same time, the state would in that way receive a benefit which it could not otherwise hope to realize, in the form of immediate rentals and payment of taxes by the lessee. It was

upon these considerations that the leases to appellant and his predecessor were executed.

It has also been the public policy of this state, from its beginning, to protect the improver of public lands held under lease, and, subject to certain conditions, to give the improver a property right in the improvements placed thereon by him during the term of such lease. See chapter 89, Laws of 1897, and Rem. Rev. Stat., §§ 7984, 7985. As stated in *State ex rel. Washington Water Power Co. v. Savidge,* 75 Wash. 116, 134 Pac. 680:

"We there find [in general legislation respecting leases and sales of state lands on which improvements have been made by the lessee] that it has been the settled policy of the state from the beginning to protect the lessee of state lands to the extent that the improvements he has put on the land has added 'to the value of the lands for the purpose of selling the land in the manner provided by law.' This equity, however, is subject to the conditions (a) that the improvements 'were placed on the land in good faith by a lessee whose lease had not been canceled or subject to cancellation for any cause,' and (b) that the lessee has complied with the terms of his lease, and (c) that the improvements were not made with intent to 'defraud the state or the intending purchaser of the land from the state.' Rem. & Bal. Code, §§ 6667, 6668, 6690 (P. C. 477 §§ 53, 99, 97)."

See, also, *Brace & Hergert Mill Co. v. State,* 49 Wash. 326, 336, 95 Pac. 278, 282.

■ An opinion rendered by the attorney general to Honorable M. B. Mitchell, under date of January 27, 1931, in reference to this very controversy, expresses the view that appellant's "right to payment for improvements is a vested property right and cannot be taken from him without just compensation." We are in accord with that statement as just quoted, and there can be no doubt that appellant has met the conditions under which he is to be protected, as set forth in the case of *State ex rel. Washington Water Power Co. v. Savidge, supra.*

We are also of the opinion that, in view of the settled policy of this state to encourage such improvements by a

lessee, and in view of the state's recognition of the right of the improver to receive compensation for the value thereof, the state is now equitably estopped from denying that appellant has any property right in the improvements erected by him upon the lands in question. We therefore proceed upon the premise that appellant had a vested property right in the lands to the extent of the value of the improvements erected thereon by him and incapable of removal without damage to the land.

It is an accepted principle that no private property shall be taken or damaged for private or public use without just compensation having been first made and paid into court for the owner. Art. I, § 16, Washington constitution.

By chapter 177, Laws of 1929, the state, through its legislative body, granted the lands to the city of Seattle and directed the governor to execute a deed of conveyance thereof to the municipality upon certification by the land commissioner, after the expiration of appellant's lease. The state thereby put it beyond its power thereafter to sell or lease the lands to appellant or anyone else. This, of course, it had the right to do. Moreover, the state, through the legislature, could have made it a condition of the grant that the city pay to the appellant the value of the improvements or could have provided some other method for such compensation, but it did not elect to do so. On the contrary, it made an absolute gift of the lands to the city without imposing any obligation whatever upon the donee. By that act the state deprived the appellant of the right to look to anyone other than the state itself for compensation. The legislative grant of the lands to the city for the purposes therein designated not only operated as an appropriation of the lands themselves to the city's public use, but also constituted a taking and damaging of appellant's private property, within the meaning of Art. I, § 16, of the constitution. Having thus deprived appellant of his property, the state must be held answerable to him for compensation. As stated in *State ex rel. Peel v. Clausen*, 94 Wash. 166, 162 Pac. 1:

"The state, through its officers, has taken relators' property and put it to a public use in defiance of the constitutional limitations upon its power to take without first making just compensation. Const., Art. I, § 16. Having failed in its duty to the citizen, the law will presume that it is prepared to pay the value of the property taken, when called upon to do so."

Of similar import are: *Great Northern R. Co. v. State,* 102 Wash. 348, 173 Pac. 40, L. R. A. 1918E, 987, and *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35.

■ ■ The second contention made by respondents is that appellant can in no event maintain an action to recover compensation for the improvements until an appraisal of the value thereof has been made in accordance with the statutory requirements. The trial court adopted that view and held that the present action is premature. The statute relied upon by respondents and by the trial court is Rem. Rev. Stat., § 7797-137 [P. C. § 6334-147], which, so far as is pertinent here, reads as follows:

"In case any lessee of tide or shore lands, for any purpose except mining of valuable minerals, or coal, or extraction of petroleum or gas, or his successor in interest, shall after the expiration of any lease *fail to purchase or re-lease from the state the tide or shore lands formerly covered by his lease, when the same are offered for sale or re-lease, then and in that event the commissioner of public lands shall appraise and determine the value of all improvements, existing upon such tide or shore lands at the expiration of the lease, which are not capable of removal without damage to the land, including the cost of filling and raising said property above high tide, or high water,* whether filled or raised by the lessee or his successors in interest, or by virtue of any contract made with the state, and also including the then value to the land of all existing local improvements paid for by such lessee or his successors in interest. . . . *In case such tide or shore lands are leased, or sold, to any person, persons or corporation, other than such lessee or his successor in interest, within three years from the expiration of the former lease,* the bid of such subsequent lessee or purchaser shall not be accepted until payment is made by such subsequent lessee or purchaser of the appraised value of the improvements as determined by

the commissioner of public lands, or as may be determined on appeal, to such former lessee, or his successor in interest. In case such tide or shore lands are not leased, or sold, within three years after the expiration of such former lease, then and in that event, such improvements existing on the lands at the time of any subsequent lease or sale thereof, shall be considered a part of the land, and shall be taken into consideration in appraising the value, or rental value, of the land, and sold, or leased, with the land." (Italics ours.)

That section of the statute requiring appraisement by the land commissioner would undoubtedly apply in a situation where the lessee *fails or declines* to apply for a re-lease, or in a situation where the lands are subsequently leased or *sold* to a person other than the former lessee. But neither of those contingencies is presented in this case. The first situation contemplates something akin to an abandonment, by the former lessee, of the property and purposes of his lease, as where such lessee fails to apply for purchase or re-lease of the lands in exercise of his preferential rights. In the case at bar, appellant did not abandon the property, but resolutely applied for a re-lease. As stated in the case of *State ex rel. Erickson v. Martin,* 4 Wn. (2d) 421, 103 P. (2d) 1097, which construed the meaning of the prior, similarly worded, Rem. Rev. Stat.; §§ 7984, 7985:

"It is a *sine qua non,* under the statute, to appraisal and determination of the cost of the fill, that the owner of the tide land lease fail to exercise the preference right of purchase or renewal of lease from the state, of the tide lands covered by such lease.

"In the case at bar, the intervener [the lessee's successor in interest] is the owner and holder of the preferential right. It is the lessee or owner referred to in the statute. It has made application for reletting of the lands to it, therefore appraisement is unnecessary. The reservation mentioned above in the contract between the relator [intervener's predecessor in interest and vendor] and the intervener will be of significance only if the lands in question are leased or sold to one who does not hold the preference right. Until that occurs, demand for appraisal and determination of the cost of the fill, may not, under the sections of the statute quoted above, be successfully made."

The second situation mentioned above, where the statute would apply, is, likewise, absent here. The state has not *sold or leased* these tidelands to the city of Seattle. By chapter 177, Laws of 1929, it made an absolute gift to the city.

A sale of property contemplates a consideration, or price, a seller, a purchaser, and a delivery of the thing sold. For a list of cases defining the words "sale" and "sell," in conformity with the definition just given, see 38 Words & Phrases (Perm. ed.) pp. 99, 562. In *Spokane v. Baughman,* 54 Wash. 315, 103 Pac. 14, the question arose as to whether the serving of intoxicating liquors by a social club to its members at a price fixed by the club and charged to the account of the members constituted a *sale* within the meaning of an ordinance regulating the sale of such liquors. In answer to that question, this court said:

"A sale has been defined by Kent as an agreement by which one of two contracting parties, called the seller, gives a thing and passes the title, in exchange for a certain price in current money, to the other party, who is called the buyer or purchaser, who on his part agrees to pay such price. It is defined in a more condensed statement by Blackstone as a transmutation of property from one man to another in consideration of some price or recompense in value. These definitions have been received by the courts, and many other definitions have been given of the word 'sale,' but the essential idea in all of them is that of an agreement or meeting of minds by which a title passes from one and vests in another. When the liquor is bought through the regularly constituted agent of the corporation, it undoubtedly belongs to the corporation, the title as well as the possession being in the corporation, and it remains there until it is transferred to the buyer for a consideration. Then it becomes the property of the purchaser, and is at his absolute disposal. He can drink it himself, give it to his guest, or throw it away; the corporation has no further interest in it. In other words, it has been paid for, and the transaction, it seems to us, involves all the elements of a sale."

In the disposition which the state made of these tidelands the essential elements of a sale are lacking. The

state was not a seller, the city was not a purchaser, and there was no consideration, or price, paid or contemplated. The statute upon which the state now relies does not fit the situation presented here and is not applicable to it. For these reasons we conclude that an appraisal was not a *sine qua non* to the maintenance of appellant's present action.

One other question remains for disposition. Over appellant's objection, the trial court admitted in evidence certain letters as part of an exhibit introduced by respondents. These letters constituted a portion of certain correspondence between the land commissioner and other persons not parties to the action. These letters were hearsay and self-serving, and permitted of no cross-examination by appellant. They should have been excluded.

The judgment is reversed and the cause remanded, with direction to the superior court to grant appellant's motion for a new trial, wherein the issues shall be tried in a manner consistent with the views herein expressed.

SIMPSON, C. J., BEALS, MILLARD, BLAKE, ROBINSON, JEFFERS, and GRADY, JJ., concur.

MALLERY, J. (dissenting)—The plaintiffs brought this action to recover the value of improvements, consisting of a bulkhead and fill placed upon certain tidelands near Ballard in 1925, and for the rent and taxes paid on the property, which was held under a lieu lease, the term of which began in 1902 and ended in 1932. The plaintiffs applied for a release of the premises, but the application has not as yet been granted. In 1929, the legislature granted certain tidelands, including those here in question, to the city of Seattle to be used for public parks, boulevards, ferry landings, and temporary waiting basin for vessels and for no other purposes. No deed has as yet been issued to the city of Seattle. The trial court dismissed the action and denied the plaintiffs' motion for a new trial. The plaintiffs appeal.

The majority opinion holds that the appellants have a

vested right in the improvements placed upon the leased land and that they may recover the value thereof. If a tenant is to have a vested right in the improvements placed upon land, such that he may recover the value thereof from the owner after the expiration of the lease, it must be by reason of some provision in the lease that created that right. No such provision is contained in the lease in question, nor is any such provision found in state law. There are certain "preference rights" covered by the state law and provided for in the lease, but these are limited and come into existence only upon the happening of certain specified contingencies. The lessee has a preference right to re-lease the premises as against a third-party lessee. If a third party purchases or leases the property within the required time, provision is made for the appraisal of non-removable improvements for which the original lessee will be compensated. The lessee has no right under the provision of his lease or any state law to compel a renewal of the lease or to re-lease the premises.

The majority opinion holds that the contingencies upon which an appraisal of the value of the improvements is to be made, have not happened. With that I agree. The value of this right in proper cases is to be determined by that particular method of appraisement which is provided for by law. The majority opinion holds that appellant cannot require such an appraisement, because the contingencies have not arisen upon which it must be based. It therefore follows that he has no vested right in the improvements under the circumstances, in which case he cannot recover their value.

There is no basis for inferring that there was any intention of the legislature of making the state liable for the value of the improvements in any event. Holding otherwise subjects the state to an unwarranted burden. Lessees could put impractical improvements upon state-owned land at exorbitant costs and then put the state to the election of either re-leasing the property or paying for their cost. The extent of improvements on state-owned land are possibly

not known definitely, but it seems clear to me that there is no direct obligation on the state to pay for them. Certainly no provision of law will support it.

The pleadings will not permit this action to be treated as if it were a condemnation case. To do so would violate all the constitutional procedure governing the exercise of the right of eminent domain. Nor can the case be treated as being one for damages. The state has committed no tortious act. On the contrary, it has acted well within its authority.

The majority opinion holds, in effect, that a tenant may recover the value of improvements, left on premises after the expiration of a lease, from the owner. This is not the law. The judgment should be affirmed.

