[No. 48489-9.  En Banc.  March 3, 1983.]

KAREN THOMAS, ET AL, *Respondents,* v. JACK FRENCH, ET AL, *Petitioners.*

*John O. McLendon, Bruce A. Kaiser,* and *McLendon & Kaiser,* for petitioners.

*Anderson, Evans, Craven & Lackie,* by *Hugh T. Lackie* and *Constance D. Gould,* for respondents.

WILLIAMS, C.J.—Petitioners are the owners and operators of the Spokane School of Hair Design. They seek review of the Court of Appeals decision which affirmed the trial court's entry of judgment and award of damages in favor of respondents for breach of contract and violations of the Consumer Protection Act (RCW 19.86). *Thomas v. French,* 30 Wn. App. 811, 638 P.2d 613 (1981). For the reasons set forth below, we reverse the Court of Appeals and remand the case for a new trial.

The Spokane School of Hair Design provides vocational training courses to prepare students for the state licensing

exam in the field of cosmetology. Respondents Karen Thomas, Sheila Vance, and Leslie Clarke are former students who enrolled, paid tuition, and eventually withdrew from the school after several weeks. Respondents claimed that the instruction they received at the school was inadequate and violated the terms of the registration contract, which provides that the school "hereby agrees to furnish said student with its regular course of instruction as mentioned in this contract." Clerk's Papers, at 8. The contract itself required the school to qualify students for the state cosmetology examination. Among other things, the laws and regulations governing schools of cosmetology require such schools to provide 2,000 hours of instruction. RCW 18.18-.050(5); WAC 308-24-300(5). The school is required to have an approved curriculum in theory and practical application, RCW 18.18.190, and the school is not permitted to charge customers for student work until the students have completed 400 hours of instruction and practice. RCW 18.18-.210. Additionally, students are not to provide services to customers except under the direct supervision of a licensed manager-operator, and instruction is to be furnished by licensed manicurists or operators. RCW 18.18.260.

Respondents brought this action for breach of contract and alleged violations of the above statutes as well as violations of the Consumer Protection Act, RCW 19.86.010 *et seq.* Immediately preceding trial, the court permitted respondents to amend their pleadings to allege negligent infliction of emotional distress arising from petitioners' breach of contract. *But see Cooperstein v. Van Natter,* 26 Wn. App. 91, 611 P.2d 1332 (1980) (requiring that infliction of emotional distress for breach of contract be intentional or wanton and reckless). Petitioners counterclaimed for amounts owed on the tuition contracts of respondents Clarke and Thomas. Also by counterclaim, petitioners alleged a cause of action for defamation based upon a written letter of complaint respondents and others had sent to the Director of Licensing, a state official charged with the licensing of cosmetologists and schools teaching cosmetol-

ogy. RCW 18.18.020. The allegedly defamatory letter was attached to petitioners' pleadings.

The case was tried to a jury. At trial, respondents testified that they received little or no instruction on the theory of cosmetology, although they were promised 1 hour of such instruction per day. They testified that during their enrollment the school was in a total state of confusion in that they received little instruction, had no textbooks, and received hours of educational credit for merely sitting in the student lounge, painting the walls of the school, or doing laundry. There was frequent turnover amongst teachers and managers and the students testified they received contradictory instructions from those teachers who remained. Respondents were required to do hairstyling for customers before completion of 400 hours of study and without supervision by licensed operators, contrary to the requirements of RCW 18.18.210, .260. Respondents attributed nervousness, anxiety, and physical ailments to the problems at the school which they allege caused poor attendance and their ultimate withdrawals from the school. After unsuccessfully attempting to force remedial action by means of a sit–down strike, the students sent the above mentioned letter to the Director of Licensing.

Following extensive testimony, the trial court denied petitioners' motions to dismiss and instructed the jury on all of respondents' theories. By special interrogatories, the jury found for each respondent on each theory, and awarded damages for breach of contract, emotional distress, and lost wages. Respondent Thomas received damages of $4,281.70; respondent Vance received damages of $4,874.80; and respondent Clarke received damages of $5,439. Thereafter, the trial court increased each of respondent's awards by $1,000 under the treble damage provision of RCW 19.86.090. The trial court also allowed a cost judgment of $935.94 and attorney fees of $12,000 under RCW 19.86.090 of the Consumer Protection Act.

Petitioners then appealed to Division Three of the Court of Appeals. That court, in a unanimous opinion, affirmed

the trial court in all respects. *Thomas v. French, supra.* Thereafter, we accepted petitioners' petition for review to examine the two issues raised therein.

The first issue raised by petitioners deals with the trial court's refusal to give a number of proposed instructions concerning mutuality of contract, duties owed, and the limitation of damages. Petitioners' theory was that, because respondents eventually were able to transfer their educational credit hours from the Spokane School of Hair Design to Spokane Community College, they suffered no actual damages. Petitioners also contend it was the lack of self-discipline and irregular attendance that caused respondents' confusion, not any inadequacy of instruction. Apparently, petitioners suggest the accrual of 2,000 hours of credit was a condition precedent to a claim for breach of contract and respondents' failure to perform that condition should excuse petitioners' failure to perform.

█ Unfortunately, petitioners fail to set forth anywhere in their briefs or their petition for review the proposed instructions, the instructions actually given, the objections they raised to the instructions given, or the trial court's rulings on the objections to the instructions. RAP 10.4(c) provides that:

> If a party presents an issue which requires study of a statute, rule, regulation, *jury instruction,* finding of fact, exhibit, or the like, *the party should type the material portions of the text out verbatim or include them by facsimile copy in the text or in an appendix to the brief.*

(Italics ours.) The word "should" in the above provision is a word of command, not merely a suggestion.

> Unless the context of the rule indicates otherwise: *"Should" is used when referring to an act a party or counsel for a party is under an obligation to perform.* The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified.

(Italics ours.) RAP 1.2(b); *State v. Jones,* 95 Wn.2d 616, 620 n.1, 628 P.2d 472 (1981).

RAP 10.4(c) was promulgated by this court in aid of

expeditious and orderly appellate procedure and is the result of a long background of experience. In each case reviewed by this court, all nine justices are asked to review claimed errors contained in the one official copy of the record on review. Without a rule like RAP 10.4(c), each justice would be required to search through sometimes large volumes of material to find matters like jury instructions claimed to have been erroneously given or refused. Such a process would make appellate review unmanageable, especially when that unnecessary task is multiplied by the vast number of cases reviewed by this court each year. Instead, we adopted RAP 10.4(c) which requires a party presenting an issue involving the study of a statute, rule, regulation, jury instruction, finding of fact, exhibit, or the like, to reproduce the material portions of the text of those matters in the brief or an appendix to the brief. When the briefs are distributed, each justice then receives a copy of the allegedly erroneous material for closer study without having to search through the entire record.

To assure the rule accomplishes its intended purpose of improving and expediting appellate procedure, we must enforce it by requiring full compliance with its clear requirements. We previously have indicated severe measures may be imposed for the failure to so comply. In *Arnold v. Laird,* 94 Wn.2d 867, 874, 621 P.2d 138 (1980), we held that the proper sanctions to be imposed for failure to comply with the requirements of RAP 10.4(c) may include nonconsideration of the claimed error. In that case, we refused to consider claimed errors in jury instructions because the language of those instructions was not set out verbatim in either the proponent's brief or an appendix thereto, as required by RAP 10.4(c). Thereafter, in *Jones,* we expressed our displeasure with the unnecessary inconvenience caused to the members of this court by counsel's failure to follow the directive of RAP 10.4(c) that proposed jury instructions be set out verbatim in the brief or an appendix to the brief. *Jones,* at 620 n.1. Nevertheless, we went on to consider the merits of the issue because of the

important constitutional question involved therein. *Cf. State v. Pegg*, 13 Wn. App. 583, 584–85, 536 P.2d 171 (1975) (exception to strict compliance with former rules of appellate procedure made when appeal involves defendant's constitutional rights). Fair warning has been given, however, that this court expects full compliance with RAP 10.4(c) and the failure to do so may result in measures as severe as nonconsideration of the claimed error.

In the case now before us, we are again faced with a situation where the clear requirements of RAP 10.4(c) have been ignored. Although the Court of Appeals overlooked this omission and went on to address the legal issues presented by petitioners' claimed errors in jury instructions, we will not do so. If there is to be a rule, there must be a point at which failure to comply therewith can no longer be tolerated. That point has been reached in the present case. Therefore, since petitioners' claims involve no important constitutional questions which we might otherwise be inclined to address, we now follow the reasoning of *Arnold* and refuse to consider petitioners' claimed errors. If no other issues were presented, we would simply dismiss this case. Fortunately for petitioners, a second issue is properly raised which merits our consideration.

The second issue involves an evidentiary ruling of the trial court admitting into evidence a letter of complaint about petitioners' school signed by 18 students (including each of the respondents), two instructors, and a manager. The letter was written to the State Director of Licensing to complain about the inadequacy of education at the school caused by the repeated turnover of instructors and managers. Petitioners contend the letter is inadmissible hearsay evidence.

The introduction of this document came about under the following circumstances:

MR. LACKIE: I am showing you now a document consisting of ten pages. Can you identify that please? Ms. THOMAS: Yes. MR. LACKIE: What does that purport to be? Ms. THOMAS: Everything that we were going through at

the time. MR. LACKIE: Did you sign that? Ms. THOMAS: Yes, I did. MR. LACKIE: Is that a true and accurate description of the activities as you saw them that were occurring at the Spokane School of Hair? Ms. THOMAS: Yes, everything. MR. McLENDON: I object, Your Honor. MR. LACKIE: On what grounds, Mr. McLendon? MR. McLENDON: Hearsay, . . . The mere fact that they wrote a letter doesn't establish the validity of anything contained therein and to try to introduce it as an exhibit is trying to get through the back door when, obviously, they could not get through the front door. MR. LACKIE: Your Honor, I fail to see the hearsay in this . . . this document . . . THE COURT: She signed the letter. I am willing to admit it. MR. McLENDON: The best evidence, Your Honor, would be the testimony of this witness, not trying to buttress this witnesses [sic] testimony by additional signatures. THE COURT: Aren't you relying on that letter in your case? In your defamation case? MR. McLENDON: No, Your Honor. MR. LACKIE: Your Honor, this parties [sic] complaint is attached to his counterclaim, so this is defamation. THE COURT: I'm going to admit it.

Report of Proceedings, at 29–30. The basis for the trial court's ruling is unclear, but it appears the evidence was admitted because respondents signed the letter and because the court felt petitioners "opened the door" to such evidence by attaching the letter to their counterclaim pleadings.

The Court of Appeals affirmed the trial court's evidentiary ruling and found the letter admissible on two alternative grounds:

> At the time it was admitted, the letter was clearly relevant to defendant's cross claim (later abandoned) for defamation because it was the basis of that claim. It was also relevant, not to show the truth of the allegations contained in it, but to demonstrate general student dissatisfaction with the conduct of the school. ER 401 and 402.

*Thomas v. French,* 30 Wn. App. 811, 819, 638 P.2d 613 (1981).

ER 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted." Obviously, the letter in question was an out-of-court statement made by those who signed the letter. That the letter was offered as proof of the matter asserted is evident from the question of respondents' counsel. "*Is that a true and accurate description of the activities* as you saw them *that were occurring* at the Spokane School of Hair?" (Italics ours.) Report of Proceedings, at 29. Thus, the letter is hearsay and is inadmissible unless it falls within a hearsay exception.

The fact that respondents signed the letter does not make it admissible in evidence. In general, the testimony of a witness cannot be bolstered by showing that the witness has made prior, out-of-court statements similar to and in harmony with his or her present testimony on the stand. *Sweazey v. Valley Transp., Inc.,* 6 Wn.2d 324, 332, 107 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1 (1940); *State v. Bray,* 23 Wn. App. 117, 125-26, 594 P.2d 1363 (1979). The exception to this rule which allows prior consistent statements of a witness as a defense against allegations of recent fabrication of the testimony is not available here since the letter was admitted on direct examination. *See State v. Bray, supra*; ER 801(d)(1). The admissibility of this letter is also questionable because it was signed by persons not parties to the action and not available for cross examination. *Moss v. Vadman,* 77 Wn.2d 396, 404, 463 P.2d 159 (1969); *Boyer v. State,* 19 Wn.2d 134, 146, 142 P.2d 250 (1943).

The trial court's admission of the letter as relevant to petitioners' defamation counterclaim was also erroneous. During the discussion concerning the admission of this exhibit, petitioners informed the court they were not relying on the letter in the defamation case and, in fact, later abandoned the claim altogether. Although the letter was attached to petitioners' pleadings, that fact alone does not render the document admissible since it was neither an admission by petitioners nor adopted by them as true. *See* ER 801(d)(2).

Since the trial court's stated reasons for admitting

the letter into evidence were erroneous, other grounds for admissibility must be examined. A trial court's ruling on the admissibility of evidence will not be disturbed on appeal if it is sustainable on alternative grounds. *Ertman v. Olympia*, 95 Wn.2d 105, 108, 621 P.2d 724 (1980); *May v. Wright*, 62 Wn.2d 69, 72–73, 381 P.2d 601 (1963); *Hall v. Anton Indus., Inc.*, 10 Wn. App. 106, 108, 516 P.2d 1070 (1973).

█ This letter may have been admissible under ER 803(a)(3) for the limited purpose of showing respondents' then existing mental, emotional, or physical condition. Respondents' discontent, as illustrated in the letter, could well have been relevant to the issue of emotional distress. "A relevant state of mind may be proven by the person's own, out–of–court, uncrossexamined, concurrent statements as to its existence." *Raborn v. Hayton*, 34 Wn.2d 105, 109, 208 P.2d 133 (1949). *See also State v. Parr*, 93 Wn.2d 95, 98–107, 606 P.2d 263 (1980). Admission of such evidence, however, is usually proper only when used for limited purposes and when accompanied by limiting instructions. *Raborn*, at 110–11, and cases cited therein. Here, there was no limiting instruction, so the evidence was not properly admitted under ER 803(a)(3). Further, the failure to have the trial court excise the names of other signatories to the letter again presents the problem of those persons being unavailable for cross examination. *See Moss v. Vadman, supra.*

█ Since no other exceptions to the hearsay rule appear to us to be applicable, we must conclude the admission of the letter into evidence was error. The remaining question is whether petitioners have demonstrated the error was prejudicial, for error without prejudice is not grounds for reversal. *See Ashley v. Lance*, 80 Wn.2d 274, 282, 493 P.2d 1242, 62 A.L.R.3d 962 (1972); *Capen v. Wester*, 58 Wn.2d 900, 902, 365 P.2d 326 (1961). Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial. *James S. Black & Co. v. P & R Co.*, 12 Wn. App. 533, 537, 530 P.2d 722 (1975).

The prejudicial value of the letter in the present case is evident on its face. Without a limiting instruction, the jury was free to accept the contents of the letter as true. While the contents of the letter were somewhat cumulative of respondents' testimony at trial, the fact that several other persons signed the letter served to reinforce the credibility of respondents' statements. Such reinforcement of their credibility may well have prejudiced the jury's assessment of respondents' testimony in other respects, especially as to damages for breach of contract and emotional distress. Because there is no way to know what value the jury placed upon the improperly admitted evidence, a new trial is necessary. *Smith v. Ernst Hardware Co.,* 61 Wn.2d 75, 80, 377 P.2d 258 (1962); *State v. Murphy,* 7 Wn. App. 505, 508–10, 500 P.2d 1276 (1972).

The Court of Appeals is reversed and the cause is re-manded for a new trial.

BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., and CUNNINGHAM and THOMPSON, JJ. Pro Tem., concur.

UTTER, J. (dissenting)—The majority recognizes our established rule that we will sustain a trial court's evidentiary ruling on any valid theory, even if the ground given at trial is erroneous. The opinion further recognizes that the letter in question may have been admissible for the limited purpose of showing respondents' then existing mental, emotional, or physical condition, but finds admission of the evidence erroneous because no limiting instruction was given. This, however, is not a reason for reversing the trial court. The burden of requesting a limiting instruction is upon the objecting party or the party adversely affected, or else the error is waived. *State v. Hess,* 86 Wn.2d 51, 52, 541 P.2d 1222 (1975); 5 K. Tegland, Wash. Prac., *Evidence* § 24, at 65 (2d ed. 1982). Here there was no such request and the defendant should not now benefit by his failure to request a limiting instruction at the trial. For this reason I disagree with the majority and would affirm the Court of

Appeals and trial court.

STAFFORD, J., concurs with UTTER, J.

Reconsideration denied August 9, 1983.