2014 JAN 13 AM 9: 2̶

COURT OF APPEALS DIV I
STATE OF WASHINGTON

FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
)
MITCHELL KING, )
)
          Appellant, )
)
and )
)
MICHELLE KING, )
nka MICHELL MARIE-KAELIN PLATT, )
)
          Respondent. )
)

No. 69426-0-I
(consolidated with
No. 69820-6-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 13, 2014

APPELWICK, J. — King and Platt each petitioned to modify the parenting plan for their daughter, K.M.K. King alleges the trial court abused its discretion in considering certain evidence, imposing restrictions on his residential time, entering an order of protection against him, and declining to hold Platt in contempt. We affirm.

## FACTS

Mitchell King and Michelle Platt married in 2001. They had a daughter, K.M.K., in 2002. The family resided in Moses Lake. In 2009, King and Platt separated. During the pendency of the dissolution, K.M.K. resided with Platt the majority of the time.

In late 2009, Platt moved to King County. King remained in Moses Lake. In 2010, a Grant County judge entered a final parenting plan, which provided that K.M.K. would reside with Platt the majority of the time, except for every other weekend, when she would reside with King.

The relationship between King and Platt quickly soured. Over the next two years, the parties engaged in numerous legal disputes over the terms and performance of the parenting plan.

In November 2011, Platt petitioned to modify the parenting plan. King cross petitioned for modification. Each sought to restrict the other's residential time. The court appointed a guardian ad litem (GAL), Dr. Elizabeth Milo, who interviewed K.M.K., Platt, and King and made recommendations about what would be in K.M.K.'s best interest. The GAL also arranged for K.M.K. to begin seeing a therapist, Dr. Jill Kinney.

Trial on the petitions began in King County Superior Court in July 2012. The court ultimately denied King's petition and granted Platt's. In its modification, the court required King to spend half of his residential time in the King/Pierce County area, unless he relocated to be within one hour of K.M.K.'s residence with Platt.

In September 2012, the court entered an order of protection against King at Platt's request. In November, King moved for an order finding Platt in contempt for withholding K.M.K. during King's residential time. The court declined to find Platt in contempt, finding that she had intentionally failed to comply with the parenting plan, but had not done so in bad faith.

King appeals and moves to strike two documents that Platt designated as clerk's papers.[1]

## DISCUSSION

### I. Modification of the Parenting Plan

King challenges the trial court's modification of the parenting plan. He argues that the trial court committed evidentiary errors during the modification trial. He also contends that the trial court improperly restricted his residential time. He further asserts that the trial court erred denying his petition to modify the parenting plan. Finally, he argues that the court erred in imposing the GAL fees solely upon King.

#### A. Evidentiary Challenges

King contends that the trial court erred when it permitted K.M.K.'s therapist to testify and when it excluded a child protective services (CPS) report that King sought to

---

[1] King moves to strike from the clerk's papers the October 26, 2012 order on King's objection to Platt's relocation, even though King designated the same order in his clerk's papers. He also moves to strike the January 31, 2013 memorandum of decision and order on contempt. We deny the motion.

The October 26 order amended a previous one filed on September 4, 2012. Citing RAP 7.2(e), King notes that no motion was filed to allow the trial court to amend an order under appeal. But, RAP 7.2(e) requires permission of the appellate court only if the trial court's determination will change the decision being reviewed by the court. The trial court may correct clerical errors on its own initiative at any time. CR 60(a). These corrections may occur after an appellate court accepts review, pursuant to RAP 7.2(e). CR 60(a). The October 26 order makes only minor amendments to correct clerical errors in the earlier version.

King argues that, under RAP 2.4(c), the appellate court may not review the January 31 memorandum of decision and order because it was not designated in King's notice of appeal. This misapprehends the meaning of "review" in the context of RAP 2.4. Platt designated the challenged order as part of the clerk's papers pursuant to RAP 9.6(a). This does not constitute a request to the appellate court to review the order. The motion is frivolous and his request for fees in bringing the motion is denied.

admit. This court reviews a trial court's ruling on evidence admissibility for abuse of discretion. State v. Vreen, 143 Wn.2d 923, 932, 26 P.3d 236 (2001).

### 1. Psychologist Testimony

King makes multiple challenges to the testimony of Dr. Kinney, K.M.K.'s therapist. He first claims that the trial court should have not have permitted Dr. Kinney to testify, because she was not properly disclosed as a witness before trial under the King County Local Civil Rules (KCLCR). He argues that Platt must have disclosed Dr. Kinney 21 days prior to trial under KCLCR 4(j) and KCLCR 26(k). Trial began on July 31, 2012. On June 20, well over 21 days before trial, Platt provided a list of potential witnesses, including Dr. Kinney. This argument fails.

King also argues that the court should not have permitted Dr. Kinney to testify as an expert witness. While Platt initially intended to call Dr. Kinney as an expert, she later indicated that Dr. Kinney would testify only as a fact witness. The court permitted Dr. Kinney to testify in this capacity alone. And, the court ultimately disregarded Dr. Kinney's trial testimony in its memorandum of decision. This argument also fails.

King further contends that the trial court abused its discretion in considering Dr. Kinney's statements made to the GAL and disclosed in the parenting evaluation. The parenting evaluation was admitted as an exhibit at trial. The trial court relied upon the report in its memorandum of decision, including the information that Dr. Kinney related to the GAL.

King specifically contests the portion of the parenting evaluation that included Dr. Kinney's statement that she saw "'no signs of bipolar disorder or affect'" in Platt. But, even if the trial court erred in considering Dr. Kinney's statement, King does not show

4

any prejudice suffered as a result. Error without prejudice is not grounds for reversal. Thomas v. French, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial. Id. We presume that a judge considers evidence only for its proper purpose. See State v. Bell, 59 Wn.2d 338, 360, 368 P.2d 177 (1962). While the trial court did rely upon the challenged statement in its memorandum of decision, it also considered Platt's affect at trial and her behavior over the year of litigation. King does not demonstrate prejudice from the court's consideration of the parenting evaluation.

The trial court did not abuse its discretion in permitting Dr. Kinney to testify or in considering her statements in the parenting evaluation.

### 2. CPS Report

King contends that the court improperly excluded a CPS report he sought to admit at trial. ER 904 provides that certain documents shall be deemed admissible if properly proposed as an exhibit, and unless objected to within 14 days. The rule does not restrict argument over the weight to be given to the evidence or the trial court's authority to evaluate the evidence's weight. ER 904(d).

King offered the CPS report as a trial exhibit. He argues that, because Platt did not object until trial, the court should not have excluded the report. But, the trial court did not altogether exclude it. Platt objected to the exhibit on a number of grounds, including hearsay and relevance. The court expressed concern about the amount of hearsay that CPS reports contain. Ultimately, it concluded that the CPS report would be admitted to explain the GAL's opinion, but not as substantive evidence. This was a proper exercise of authority under ER 904(d).

King also argues the CPS report was relevant, because it contained material facts about Platt's actions. While this may be true, the trial court based its ruling on hearsay, not relevance. This argument fails.

King further alleges that the report was a "business record made by an agency that is easily authenticated." But, he does not cite to any authority to support his allegation. We therefore decline to consider his argument. State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

The trial court did not abuse its discretion in admitting the CPS report for limited purposes.

B. Restrictions on King's Residential Time

King contests the modification of the parenting plan, which imposed restrictions on his residential time. We review a trial court's decision to modify a parenting plan for abuse of discretion. In re Marriage of Zigler, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. In re Marriage of Fiorito, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. Id. at 664. The court's decision is based on untenable grounds if the factual findings are unsupported by the record. Id. A parenting plan should serve the best interests of the

child, especially with respect to residential time. See In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

King alleges that the trial court improperly granted Platt relief that exceeded her request in her petition for modification.[2] RCW 26.09.260 establishes the standards and restrictions that govern a trial court's modification of a parenting plan. Once the threshold for modification is met, the court has full authority to enter a parenting plan based on the evidence presented. The statute does not limit modifications solely to the relief requested by the parties in its motion.

In her proposed parenting plan, Platt requested that the court require King to complete several assessments and treatments, during which King's residential time would be substantially reduced and would take place in Kent for half of that remaining time. The proposal provided that, once King completed his treatments, his residential time would return to its original state.

The trial court's modification did not require King to participate in any programs. Nor did it substantially reduce King's residential time. It merely changed the location of the residential time. In this regard, the trial court actually granted less than what Platt requested. Instead, the court exercised its discretion to modify the plan in a manner similar to what Platt requested by reducing K.M.K.'s travel time. And, it provided King the option to return to the original residential schedule if he moved closer to K.M.K., an arrangement that the court found would be in K.M.K.'s best interest. This was not an abuse of discretion.

---

[2] According to King, Platt never filed a proposed parenting plan, and thus did not clearly identify the relief she desired. King overlooks Platt's proposed parenting plan filed with her petition for modification.

King also contends that the trial court improperly considered his residential location when ruling on Platt's petition for modification. King argues that, because the court was aware of the distance between the parents' residences at the time of the final parenting plan, the court's reliance on that distance ran afoul of RCW 26.09.260.

RCW 26.09.260(1) mandates that the court shall not modify a parenting plan unless it finds, upon the basis of new facts or facts that were unknown to the court at the time of the prior plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party. Both parties alleged a substantial change in circumstances and the trial court made the threshold finding that one had occurred. That finding is not appealed. Once the court finds that there is a substantial change in the child's circumstances, it may then consider previously known facts. Accordingly, the court may consider the distance between the parents' residences.

Here, Platt based her petition for modification on three factors: King's violation of the court order preventing him from questioning K.M.K. about Platt, King's drinking, and K.M.K.'s fear of visiting King in Moses Lake. As a result, Platt proposed a parenting plan that required King to complete an alcohol assessment and that reduced the amount of time K.M.K. spent in Moses Lake.

The trial court did not adopt the suggested alcohol assessment and related treatments. But, it did address Platt's concern about K.M.K.'s time in Moses Lake by directing that half of King's residential time occur in the King/Pierce County area. The court also considered the GAL's recommendation that King and Platt should live in the same place because K.M.K. would fare better if her residential time were split evenly between both parents. The terms of the modification provided an incentive for King to

move closer to K.M.K. by lifting his residential time restrictions if he relocated. And, while the court did not adopt the GAL's recommendation that the parties live in Moses Lake, the court gave reasons supported by the record for preferring King/Pierce County. In King/Pierce County, the court noted that K.M.K. is close to extended family, attends a good school, engages in activities, and has her medical needs met.

The court stated that its aims were to (1) reduce K.M.K.'s long distance travel time and (2) protect K.M.K. from dangerous winter travel conditions. It is true that the modification applied equally to summer months when the winter travel conditions are not an issue. Even so, concluding that the evidence demonstrated that the extensive travel time resulted in a change in K.M.K.'s well-being—a change that was not evident at the time of the original parenting plan—was not manifestly unreasonable or untenable.

Finally, King argues that the modification improperly restricts his choice of residence. But, restrictions of this nature are within the trial court's authority. See In re Marriage of Fahey, 164 Wn. App. 42, 67-68, 262 P.3d 128 (2011), review denied, 173 wn.2d 1019, 272 P.3d 850 (2012). In Fahey, the children resided with their mother for the majority of the time. Id. at 47. After the mother moved from Edmonds, where the father still lived, id. at 48, to Omak, id. at 46, the trial court required that the father spend his weekend residential time in the Omak area. Id. at 66. The court based this restriction on its concern that the children were spending too much time in the car and were unable to participate in normal weekend activities. Id. at 67. The appellate court found that this was not an abuse of discretion. Id. at 68. Fahey demonstrates the

court's authority to restrict a parent's exercise of residential time to a specific location based on the needs and best interests of the child.

The trial court did not abuse its discretion in limiting the locale of King's residential time in order to limit the amount of time K.M.K. spent in transit.

## C. Denial of King's Petition

King also challenges the court's denial of his cross-petition for modification of the parenting plan. King petitioned to modify the plan under RCW 26.09.260(2)(c), alleging that Platt created an environment detrimental to K.M.K.'s health, and that the advantage K.M.K. would gain from a change in environment outweighed any resulting harm. King proposed that Platt's residential time be limited or restrained completely. The court declined to grant King's petition.

King maintains that the trial court failed to rule on evidence of Platt's lack of parenting. He points to RCW 26.09.191(3), which provides that:

> [T]he court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
>     (a) A parent's neglect or substantial nonperformance of parenting functions;
>     (b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;
>     (c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;
>     (d) The absence or substantial impairment of emotional ties between the parent and the child;
>     (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;
>     (f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or
>     (g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

King asserts that the court did not properly address the evidence demonstrating that Platt exhibited a number of these behaviors. Specifically, he expressed concern about Platt's relationship and lifestyle choices; Platt's mental health; and those of Platt's behaviors that he considered an "abusive use of conflict." He also argues that the trial court did not properly consider the parenting evaluation, which recommended that K.M.K. move to Moses Lake.

However, in its memorandum of decision following the trial, the court discussed Platt's circumstances at length. The court detailed Platt's frequent moves, acknowledging that they chiefly stemmed from financial troubles. It reviewed Platt's mental health status and discussed her medical emergency relating to her bipolar medication. The court also addressed King's concern about Platt's social choices, stating that while Platt's choices "may not be what others would choose," this behavior did not rise to the level of detriment required to overcome the strong presumption of residential continuity.

The court also addressed the parenting evaluation at length. It evaluated each of the parents and their respective harmful behaviors. The parenting evaluation ultimately concluded that K.M.K. should split her residential time evenly between both parents. The GAL recommended that the parties live in Moses Lake, because K.M.K. would have greater stability and the ability to participate in extracurricular activities there, and it has a lower cost of living.

The court weighed these recommendations against the benefits of K.M.K. remaining in Puyallup. It noted that, in Puyallup, K.M.K. is close to extended family from both sides, attends a good school, engages in activities, and has her medical needs

met. The court also recognized that the chaos in Platt's life was largely due to financial struggles, and that the court would not make residential provisions for children based on the relative financial resources of the parents. Ultimately, the court found that K.M.K.'s present environment was not detrimental to K.M.K.'s health, and that the advantage of a change in environment did not outweigh the likely harm. Therefore, RCW 26.09.260(2)(c) did not warrant modification in this case.

The trial court considered the circumstances in Platt's life that concerned King. And, the court addressed the parenting evaluation, explaining why it opted not to follow the GAL's recommendations. The findings were supported by sufficient evidence. This was not an abuse of discretion.

## D. GAL Fees

King alleges that the trial court abused its discretion by requiring him to pay the entirety of the GAL fees, rather than allocate it between King and Platt. The trial court has the authority to appoint a GAL to represent the interests of a minor in any proceeding under chapter 26.12 RCW.[3] RCW 26.12.175(1)(a). The court may order either or both parents to pay for the costs of the GAL, depending on their ability to pay. Id. at .175(1)(d).

In its order appointing the GAL, the court stated that King "shall advance the retainer fee and the court must reallocate the GAL's fees at trial." After the modification trial, the court noted that it had no financial declarations as required for it to allocate the

---

[3] A proceeding under this chapter includes "[a]ny proceeding . . . in which the family court is requested to adjudicate or enforce the rights of the parties or their children regarding the determination or modification of parenting plans, child custody, [or] visitation." RCW 26.12.010(1).

GAL fees between the parties. It instructed King that, if he wished to pursue contribution from Platt, he must provide a financial declaration by September 14, 2012. King filed a declaration on September 11, but it lacked supporting documents. Accordingly, the court extended his deadline to November 14, noting that he must provide the proper documentation. King did not meet his extended deadline. The trial court determined that there would be no allocation of fees between the parties.

King was given ample time and clear instructions to follow to demonstrate his financial status, and he did not do so. The trial court did not abuse its discretion in ordering King to pay the entire GAL fee.

The trial court properly denied King's motion for modification and did not err in imposing the GAL fees entirely upon King.

II. Order of Protection

At Platt's request, the court entered an order of protection against King. King challenges that order. First, citing to RCW 10.14.080(3) King alleges that the court must make a finding of actual harassment. This provision states that "[a]t the hearing, if the court finds by a preponderance of the evidence that unlawful harassment exists, a civil antiharassment protection order shall issue prohibiting such unlawful harassment." RCW 10.14.080(3). The statute does not require the court to articulate specific instances of harassment in the order.

Additionally, King argues that he did not timely receive notice of the hearing date. RCW 10.14.080(5) requires that a petitioner seeking an antiharassment protection order must serve the respondent not less than five days before the hearing. The statute does not render a hearing and resulting order per se invalid in the case of late notice.

13

The record shows that King received service of the hearing on September 21, 2012. The hearing was on September 24, 2012. Failure to comply with a notice requirement is not fatal if the nonmoving party had actual notice of the proceeding and time to prepare. Cf. Loveless v. Yantis, 82 Wn.2d 754, 759-60, 513 P.2d 1023 (1973) (discussing timely service of motions under CR 6). King appeared at the hearing and did not object or ask for a continuance on the basis of insufficient service.[4] He does not argue that he was prejudiced by a lack of time to prepare to respond to the original motion.

King also asserts that, because the trial court should not have imposed an order for protection, it lacked authority to allow Platt and K.M.K. to move to an undisclosed location. King does not provide any citation to the record or authority as RAP 10.3(a)(6) requires. In fact, King elsewhere alleges that Platt moved without permission of the court. We decline to consider his argument any further.

The trial court did not abuse its discretion when it entered the order for protection.

III.  Contempt Hearing

King subsequently moved for an order finding Platt in contempt for withholding K.M.K. during King's residential time. The court denied his motion. King argues that the trial court improperly presided over the contempt proceedings. He also contends that the trial court erred when it did not find Platt in contempt.

---

[4] King requested a continuance based on new evidence that Platt introduced at the hearing, and objected to Platt's pro se status and relitigation of issues.

A. Jurisdiction Over Contempt Hearing

King raises a number of challenges to what he calls the court's decision to "retain jurisdiction." As a threshold matter, we must be clear when using the term jurisdiction. Where a court acts without subject matter jurisdiction, the consequences are "draconian and absolute." Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). As a result, appellate courts must be cautious when asked to characterize an issue as jurisdictional. Id.

Article IV, section 6 of the Washington Constitution vests the superior courts with jurisdiction in "all matters of . . . divorce." RCW 26.12.010 grants the superior courts jurisdiction over family law proceedings. Thus, the trial court here had jurisdiction to preside over the contempt hearing.

Nonetheless, King disagrees. He argues that the trial court improperly retained jurisdiction to the exclusion of other courts or judges. He cites State v. Caughlan to support this point. 40 Wn.2d 729, 732, 246 P.2d 485 (1952). In Caughlan, the appellant alleged that the trial court improperly considered the respondent's motion to dismiss while the appellant's cause was still pending before another department of the court. Id. at 731. The appellate court disagreed, noting that all judges within the King County Superior Court shared identical authority. Id. at 732.

Caughlan is unpersuasive here. This was not a conflict between judges of the same court: King argues that the superior court is the wrong venue altogether. But, as established, the superior courts have jurisdiction over family law proceedings. RCW 26.12.010. This includes post-trial procedures. See, e.g., In re Marriage of Mathews,

70 Wn. App. 116, 126, 853 P.2d 462 (1993) (holding that the trial court had authority to enforce its dissolution decree using its contempt powers).

Still, King maintains that the trial court lacked authority over the contempt hearing. He argues that the King County Local Family Law Rules (KCLFLR) mandate that contempt proceedings be designated exclusively to family law commissioners.[5] While the KCLFLRs provide that a contempt hearing be scheduled on the family law calendar,[6] this does not bar a superior court judge from conducting the proceeding. King's argument was thus not jurisdictional, but a procedural challenge.

Though King frames his remaining challenges as jurisdictional, they are not. He next argues that, because the trial court presided over the contempt hearing, he was denied "an important right of revision." Under RCW 2.24.050, a party may seek review of a commissioner's ruling in superior court. King maintains that he lost his ability to seek revision with a de novo standard, as superior court review of a commissioner's ruling would provide. King has not established that he has a right to a commissioner's ruling in this context. And, King received the superior court review he apparently desires without first having to bring his case before a commissioner.

Finally, King asserts that the trial court judge should have recused herself. This is so, he maintains, because the judge had "essentially ordered the parties to engage in

---

[5] King also argues that the trial court "violated LCR 5" and "erroneously relied on LCR 6." It is unclear to which body of rules King refers. Assuming it is the King County Local Civil Rules, his reliance is confusing. KCLCR 6 does not exist. KCLCR 5 pertains to service and filing with the clerk's office.

[6] KCLFLR 5(b) states that, "[e]xcept as otherwise provided in these rules, contested pre-trial and post-trial motions in family law proceedings...shall be heard on the Family Law Motions Calendar." KCLFLR 17(a)(1) provides that a contempt hearing "shall be scheduled on the Family Law Motions Calendar."

a settlement conference," which would disqualify her under KCLCR 16(b)(5).[7] But, King has not demonstrated that the trial court judge did in fact conduct a settlement conference.

The trial court properly presided over the posttrial proceedings.

## B. Refusal to Find Contempt

King also contests the trial court's refusal to find Platt in contempt for withholding K.M.K. during King's residential time. Platt responds that she had a reasonable excuse for withholding K.M.K., because she was afraid for her daughter's safety.

After staying with King during the weekend of October 5, 2012, K.M.K. made a statement to the police detailing King's behavior. According to K.M.K., King had been drinking and questioning her about Platt. K.M.K. expressed concern about spending time with King in the future. Platt subsequently withheld K.M.K. from King's residential time in late October and early November.

King then moved for an order to show cause for contempt. The court held a contempt hearing on December 10, 2012.[8] Ultimately, it found that Platt had violated the parenting plan, but had not done so in bad faith. King makes a number of challenges to this finding.

Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court. Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725

---

[7] KCLCR 16(b)(5) reads: "A judge presiding over a settlement conference shall be disqualified from acting as the trial judge in the matter, unless all parties agree in writing that he/she should so act."

[8] Neither party designated the transcript of the contempt hearing as part of the record on appeal.

(1995). Unless the trial court abuses its discretion, we will not disturb its decision on appeal. Id.

### 1. Admissibility of child hearsay

King first contests the trial court's admission of K.M.K.'s statement. He argues that the statement was inadmissible hearsay. Platt counters that it was admissible, because she offered it to demonstrate Platt's state of mind and why her decision to withhold K.M.K. was in good faith.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is generally inadmissible, unless there is an applicable exception. ER 802. A statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement. State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006)."

The court indicated in its order following the contempt hearing that, based on K.M.K.'s statement about King's behavior, it found no bad faith on Platt's behalf. It was not error that the trial court considered K.M.K.'s statement not for the truth of what K.M.K. said, but that the fact the statement was made affected Platt's behavior.

### 2. Lack of Bad Faith

King also argues that the court erred in finding that Platt did not act in bad faith. He notes Platt's admission that she purposefully withheld K.M.K. and the multiple warnings previously received from the court advising Platt not to withhold the child from visits.

A parent seeking a contempt order to compel another parent to comply with a parenting plan must establish the contemnor's bad faith by a preponderance of the evidence. In re Marriage of James, 79 Wn. App. 436, 442, 903 P.2d 470 (1995). A parent who refuses to perform the duties imposed by a parenting plan is per se acting in bad faith. RCW 26.09.160(1); In re Marriage of Rideout, 110 Wn. App. 370, 377, 40 P.3d 1192 (2002), aff'd, 150 Wn.2d 337, 77 P.3d 1174 (2003). To avoid a contempt order, the parent must establish by preponderance of the evidence a reasonable excuse for his or her failure to comply. RCW 26.09.160(4); Rideout, 110 Wn. App. at 377.

In Rideout, the mother intentionally withheld the daughter during the father's residential time, but argued that it was in good faith, because the daughter refused to go. 110 Wn. App. at 377. The court disagreed, because the record demonstrated that the mother contributed to the daughter's recalcitrance to visit her father. Id. at 379. It further noted that the mother seemed to understand herself as a bystander in the situation, rather than someone with the responsibility to comply with the plan. Id. at 381.

Platt acknowledged during the modification trial that she had a duty not to withhold K.M.K., but that she would still do so out of concern for her daughter's safety. This is a valid concern not implicated in Rideout. The record does not demonstrate that Platt contributed to her daughter's fears. And, though King accuses Platt of forging K.M.K.'s statement, he does not support that allegation. It was not an abuse of discretion for the trial court to find that Platt did not act in bad faith when she violated the parenting plan.

### 3. Shift of Burden of Proof

King further contends that the trial court improperly shifted the burden of proof to King by reappointing the GAL, this time to interview K.M.K. in response to her statements to police about the weekend of October 5, 2012. King does not explain how this interview placed a burden of proof upon him at the hearing. We cannot review the issue.

### 4. Consideration of repercussions of finding of contempt

Finally, King alleges that the court erroneously considered the repercussions of multiple findings of contempt under RCW 26.09.260(2)(d), and erred in advising Platt thereof. RCW 26.09.260(2)(d) permits the court to modify a residential schedule in a parenting plan where it finds that a parent in contempt at least twice within three years because the parent failed to comply with the residential time provisions. King suggests, but does not demonstrate, that the trial court relied upon this potential consequence in its decision not to find Platt in contempt.

Though the court acknowledged that Platt did not comply with the parenting plan, it declined to find her in contempt because it found no bad faith. This finding was based on K.M.K.'s statement discussed above. There is no mention in the order of the repercussions of multiple findings of contempt. King provides no evidence for his assertion that the trial court acted with nefarious or biased motivation.

The trial court did not abuse its discretion by declining to find Platt in contempt.

### IV.   Attorney Fees

Platt requests attorney fees and costs on appeal pursuant to RCW 26.09.140 ("Upon any appeal, the appellate court may, in its discretion, order a party to pay for the

cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs."). We grant Platt's request and award attorney fees and costs on appeal, subject to compliance with RAP 18.1(d).

We affirm.

Appelwick, J.

WE CONCUR:

Becker, J.